1  **REICKER, PFAU, PYLE & McROY LLP**
   1421 State Street, Suite B
2  Santa Barbara, CA 93101
   Tel (805) 966-2440
3  Fax (805) 966-3320
   Robert B. Forouzandeh (State Bar No. 247177)
4  rforouzandeh@rppmh.com

5  Attorney for Defendant Megan Destito

6

                    UNITED STATES DISTRICT COURT
7
                  FOR THE CENTRAL DISTRICT OF CALIFORNIA
8

9  | | |
   |---|---|
10 | ANNE L. THART, an individual and trustee of THE ANNE L. THART LIVING TRUST DATED JULY 1, 1998; RUSSELL CHADWICK MCALLISTER, an individual and trustee of THE MCALLISTER FAMILY TRUST; JOSEPH A. PROCOPIO, an individual and trustee of THE JOSEPH A. PROCOPIO SR. FAMILY TRUST; GLENN T. PINDER, an individual and sole member of PINDER ENTERPRISES, LLC, | Case No.: 2:24-cv-10876 |
11 | | **MEGAN DESTITO'S COUNTER CLAIM** |
12 | | |
13 | | Complaint filed: December 18, 2024 |
14 | | |
15 | | |
16 | | |
17 | | |
18 |          Plaintiffs, | |
19 | vs. | |
20 | | |
21 | COLLIERS INTERNATIONAL GROUP, INC., a Canadian corporation; MILLCREEK COMMERCIAL PROPERTIES, LLC, a UTAH limited liability company; MILLROCK INVESTMENT FUND 1, LLC, a Utah limited liability company; KEVIN LONG, an individual; BRENT SMITH, an individual; DOUGLAS SCHEEL, an individual; MOUNTAIN WEST COMMERCIAL, LLC, a Utah limited | |
22 | | |
23 | | |
24 | | |
25 | | |
26 | | |
27 | | |
28 | | |

| | |
|---|---|
| liability company; MEGAN DESTITO, an individual; CAMS REALTY, LLC, a Utah limited liability company; KGL ADVISORS, LLC, a Utah limited liability company; and DOES 1-10, inclusive, | |
| Defendants. | |
| MEGAN DESTITO, | |
| Counter Claimant. | |
| vs. | |
| ANNE L. THART, an individual and trustee of THE ANNE L. THART LIVING TRUST DATED JULY 1, 1998; and ROES 1 through 5, inclusive, | |
| Counter Defendants. | |

Counter Claimant MEGAN DESTITO ("**Destito**"), hereby counter-claims against Counter Defendant ANNE L. THART, an individual and trustee of THE ANNE L. THART LIVING TRUST DATED JULY 1, 1998; and ROES 1 through 5, inclusive (all of which Counter Defendants are sometimes referred to collectively as "Counter Defendant") and alleges against them as follows.

## PARTIES

1.  Counter Claimant Megan Destito is an individual who is domiciled in California. Destito has at all material times herein been an officer and principal of Southern California Exchange Services, LLC, a California limited liability company ("SCES") with its principal place of business in Ventura County, California and which has at all material times herein been in good standing with the California Secretary of State.

2. Upon information and belief, Destito alleges that Counter Defendant ANNE L. THART, an individual and trustee of THE ANNE L. THART LIVING TRUST DATED JULY 1, 1998 is an individual who at all material times has been a resident of Lancaster, California ("Thart").

3. Destito is unaware of the true names and capacities of Counter Defendants sued herein as ROES 1 through 5, inclusive, and is unaware of exactly how their conduct contributed to Destito's damages, and therefore sues those Counter Defendants by fictitious names. Destito will amend this Counter Claim to allege the true names and capacities and conduct of those Counter Defendants when they are ascertained. Destito is informed and believes and thereon alleges that each of the fictitiously named Counter Defendants is in some manner responsible and liable for the acts, omissions, events, transactions, and damage described in this Counter Claim.

## GENERAL ALLEGATIONS

4. On or about September 29, 2022, SCES and Thart entered into that certain Real Property Exchange Agreement (the "Contract") under which SCES would act as a 1031 exchange accommodator for Thart. A true and correct copy of the Contract is attached as Exhibit A and incorporated herein.

5. Pursuant to the Contract, Thart was required among other things to, "indemnify, defend and hold [SCES], its officers, employees, attorneys and agents, harmless from and against any and all costs, liabilities, losses, damages or injuries in any manner arising out of or incident to [SCES's] acquisition, holding or conveyance of any property, or [Thart's] participation in the tax-deferred exchange as provided herein, except to the extent that such costs, liabilities, losses, damages or injuries are due to [SCES's] gross negligence or willful misconduct."

6. Destito has at all material times been an officer and agent of SCES.

///

7. In that capacity Destito performed various services on behalf of SCES in carrying out SCES's contractual duties to Thart under the Contract.

8. In this case, Destito faces liability as a result of her actions carried out in furtherance of the Contract. As a result, Destito has been required to incur the cost of defending against this suit and the risk of a judgment being entered against her.

## FIRST CAUSE OF ACTION

### Breach of Contract

### (Against all Counter Defendants)

9. Destito restates and incorporates the allegations contained in each and every preceding paragraph as if fully restated herein.

10. SCES and Thart entered into the Contract on or about September 29, 2022.

11. The Contract contained an indemnification clause at Section 7 which provides that Thart is to indemnify and defend Destito, as an officer and agent of SCES from any claims arising out of Destito and/or SCES's performance of services under the Contract.

12. Destito and SCES performed their duties under the Agreement.

13. Thart breached the above-cited provision of the Contract when it refused to indemnify Destito from the claims asserted in the Complaint.

14. As a result of Thart's breach, Destito has had to incur costs to defend against the claims in this action and ultimately any liability arising from such, if any.

15. The claims against Destito in the Complaint are false and did not arise from Destito or SCES' gross negligence or willful misconduct,

16. The Contract contains a provision awarding reasonable attorney's fees and costs to the prevailing party in any legal action initiated under the Contract.

**MEGAN DESTITO'S COUNTER CLAIM**

17. Destito seeks all damages available to her under law and equity including all costs associated with defending against the claims in this action and in prosecuting her claims against Thart along with any judgment amount against Destito, if any.

18. Destito furthermore seeks to recover her reasonable attorney's fees and costs incurred in this action.

## SECOND CAUSE OF ACTION

### (Contractual Indemnity as Against Thart)

19. Destito incorporates herein by this reference each of the allegations contained in Paragraphs 1 through 18 above as if set forth in full herein.

20. In the Contract, Thart is required to indemnify and defend Destito, as an officer and agent of SCES, from any claims brought against Destito arising from the performance of her duties under the Contract.

21. Destito is incurring defense expenses as a result of claims brought against her arising from the performance of her duties under the Contract. Neither Destito nor SCES carried out their duties under the Contract with gross negligence or willful misconduct.

22. By reason of the foregoing, Destito is entitled to be indemnified by Thart for any costs and damages that Destito incurs as a result of claims brought against her for actions she performed under the Contract. Furthermore, Destito is entitled to her attorney's fees and costs in both defending against the claims and for pursuing this action against Thart.

## PRAYER

Destito prays for judgment on this Counter Claim as follows:

1. That Destito be awarded all damages and other monetary relief available at law or equity, including:

   a. The cost of defending against the claims in the Complaint and the costs of bringing this action against Thart, the true amount to be proven

at trial;

    b.    All amounts that Destito is obligated to pay for the claims asserted against Destito in the Complaint, the true amount to be proven at trial.

2. For the costs of suit herein;

3. For reasonable attorney's fees and costs; and

4. For such other relief as the Court deems just and proper.

Date: February 6, 2025        REICKER, PFAU, PYLE & McROY, LLP

By_____
Robert B. Forouzandeh
Attorney for Defendant Megan Destito

# EXHIBIT A



**REAL PROPERTY EXCHANGE AGREEMENT**
*(Amended 11/4/2022)*

(Exchange No. 0922-2906-D)

   **THIS REAL PROPERTY EXCHANGE AGREEMENT** ( "*Agreement*") is made and entered into as of September 29, 2022, amended November 4, 2022, by and between Anne L. Thart, Trustee of the Anne L. Thart Living Trust, dated July 1, 1998 ("*Exchangor*") and Southern California Exchange Services, LLC, a California limited liability company ("*Intermediary*"), at Camarillo, California, with reference to the following facts and intentions:

   A. Exchangor owns that certain real property commonly known as 1116 Stetson Avenue, Rosamond, CA 93560 and 43461 30th Street West, #1, Lancaster, CA 93536, and described on the attached Exhibit A (the *"Relinquished Property"*).

   B. Exchangor has entered into two different purchase and sale agreements (the "*Relinquished Property Agreement*") with Jacob Joseph M. Ediger and Nicholas Gomez ("*Buyers*") by which Exchangor has agreed to convey and Buyer has agreed to acquire Exchangor's interest in the Relinquished Property on the terms and conditions set forth in the Relinquished Property Agreement.

   C. Exchangor desires to make a qualified tax-deferred exchange of the Exchangor's interest in the Relinquished Property for other property or properties of like kind ("*Replacement Property*") in such a way as to qualify for tax-deferred treatment in accordance with Section 1031 of the Internal Revenue Code, the Treasury Regulations promulgated thereunder and corresponding provisions of state tax legislation.

   D. Intermediary is willing to act as a qualified intermediary, as that term is defined in Treasury Regulation Section 1.1031(k)-1(g)(4), in connection with Exchangor's tax-deferred exchange.

   NOW, THEREFORE, in consideration of the mutual covenants, conditions and agreements set forth herein, the parties agree as follows:

   **1.** **Exchange of Properties**.  Subject to and conditioned upon the close of the Relinquished Property Agreement and subject to and upon the terms and conditions set forth in this Agreement, Intermediary hereby agrees to acquire the Relinquished Property from Exchangor, to transfer the Relinquished Property to Buyers, to acquire the Replacement Property from the seller thereof ("*Seller*") and to transfer the Replacement Property to Exchangor, as described herein.

   **2.** **Exchange Fee.**  As consideration for Intermediary's performance under this Agreement, Exchangor agrees to pay to Intermediary a fee (the "Exchange Fee") in accordance with the Fee Schedule attached hereto as Exhibit B.  **[*Optional*: As part of the Exchange Fee,**

1

**Intermediary shall also be credited with all earnings attributable to the Bank Account, as described in Section 6.A below)].**

3.  **Relinquished Property.**

    A.  **Transfer of Relinquished Property**. The Relinquished Property shall be transferred as follows:

        i.  Exchangor shall assign its rights, but not its obligations, in the Relinquished Property Agreement to Intermediary in accordance with Treasury Regulation Section 1.1031(k)-1(g)(4)(v);

        ii. All parties to the Relinquished Property Agreement shall be notified in writing of such assignment on or before the date of the transfer of the Relinquished Property; and

        iii. The Relinquished Property shall be transferred by Exchangor to Buyer pursuant to the Relinquished Property Agreement, and in accordance with Treasury Regulation Section 1.1031(k)-1(g)(4)(iv), Intermediary shall be treated as having acquired and transferred the Relinquished Property for the purposes of the tax-deferred exchange.

    B.  **Debts and Closing Costs; Deposit of Net Proceeds**. Intermediary shall acquire the Relinquished Properties from Exchangor subject to the principal and interest balance of all debts secured by liens against the Relinquished Property as of the closing of the Relinquished Property Agreement and any unsecured debts that Intermediary has agreed to assume from Exchangor, and these debts shall be paid from the proceeds of the disposition of the Relinquished Property. Intermediary shall execute a settlement statement for the closing of the Relinquished Property Agreement showing all closing items and debt payments after Exchangor approves such settlement statement in writing. The net proceeds from the disposition of the Relinquished Property (the "***Relinquished Property Proceeds***") shall be deposited in the Exchange Account (defined in Section 6, below). If Exchangor has received any earnest money deposits or option payments that Exchangor wants to include as Relinquished Property Proceeds, Exchangor shall deposit them with Intermediary or the escrow agent for the Relinquished Property Agreement prior to the transfer to Buyer.

4.  **Replacement Property**.

    A.  **Identification**. The identification period, as defined in Treasury Regulation Section 1.1031(k)-1(b)(2) (the "***Identification Period***"), begins on the date the Relinquished Property is transferred by Exchangor and ends at midnight of the forty-fifth (45th) day thereafter. Exchangor shall designate the Replacement Property during the Identification Period in a manner that complies with Treasury Regulation Section 1.1031(k)-1(c) and (e).

    B.  **Acquisition**. The exchange period, as defined in Treasury Regulation Section 1.1031(k)-1(b)(2) (the "***Exchange Period***"), begins on the date the Relinquished Property is transferred by Exchangor and ends at midnight on the earlier of the one hundred eightieth (180th) day thereafter, or the due date (including extensions) for the Exchangor's Federal tax return for the taxable year in which the transfer of the first Relinquished Property occurs. Exchangor shall acquire the Replacement Property during the Exchange Period.

    The Replacement Property shall be acquired as follows:

     **i.** Exchangor shall enter into a purchase agreement with the Seller for the acquisition of the Replacement Property (the "***Replacement Property Agreement***");

     **ii.** Exchangor shall assign its rights, but not its obligations, in the Replacement Property Agreement to Intermediary in accordance with Treasury Regulation Section 1.1031(k)-1(g)(4)(v);

     **iii.** All parties to the Replacement Property Agreement shall be notified in writing of such assignment on or before the date of the transfer of the Replacement Property from Seller; and

     **iv.** The Replacement Property shall be transferred from Seller to Exchangor pursuant to the Replacement Property Agreement and, in accordance with Treasury Regulation Section 1.1031(k)-1(g)(4)(iv), Intermediary shall be treated as having acquired and transferred the Replacement Property for the purposes of the tax-deferred exchange.

   **C.** **Closing Costs; Payment of Acquisition Cost**. Intermediary shall execute a settlement statement for the acquisition of the Replacement Property, showing the acquisition costs and all closing items, after Exchangor approves such settlement statement in writing. Proceeds shall be disbursed from the Exchange Account to the escrow agent or Seller, as the case may be, to acquire the Replacement Property. If the cost of the Replacement Property exceeds amount of the Exchange Account, Exchangor shall deposit (and/or arrange for a lender to deposit) the necessary additional amount with the escrow agent or Seller.

**5.** **Direct Deed Provision.** Intermediary hereby instructs Exchangor to deed the Relinquished Property directly to the Buyer on behalf of Intermediary and shall instruct the Seller of the Replacement Property to deed the Replacement Property directly to Exchangor on behalf of Intermediary. Nothing associated with such a direct conveyance shall be inconsistent with Exchangor's intent to accomplish a tax deferred exchange.

**6.** **Exchange Account**.

   **A.** **Deposits**. The Exchange Account shall include (a) the Bank Account, as defined below; and (b) any other property held by Intermediary for the tax-deferred exchange, including money, promissory notes and other property from Buyer.

   The Relinquished Property Proceeds shall be deposited and invested in a money market account subject to the control of Intermediary, at a bank selected by Intermediary (the "***Bank Account***"). **[The Bank Account may be held by an escrow holder as a "qualified escrow," or a trustee as a "qualified trust," as defined in Treasury Regulation Section 1.1031(k)-1(g)(3). Intermediary shall be credited with all earnings attributable to the Bank Account, less the costs, if any, attributable to the Bank Account, and such earnings shall be a part of the Exchange Fee]**. Intermediary shall use its best efforts to cause the bank to provide Exchangor with a monthly statement showing the balance in the Bank Account. In addition, Intermediary shall provide Exchangor with an accounting after each deposit or disbursement from the Bank Account, other than an interest deposit.

   **B.** **Disbursements**. Disbursements shall be made from the Exchange Account for:

     **i.** Amounts paid to acquire the Replacement Property under Section 4;

    **ii.**  Any items that the Exchangor may receive as a consequence of the disposition of property, such as prorated rents, and transactional costs of the Exchangor such as commissions, prorated taxes, recording or transfer taxes and title and escrow fees, as described in Treasury Regulation Section 1.1031(k)-1(g)(7); or

    **iii.**  Upon an event described in Section 6.C.

  **C.**  **Limitations on Exchangor's Rights to Exchange Account**. In accordance with Treasury Regulation Section 1.1031(k)-1(g)(6), in no event shall Exchangor receive, pledge, borrow or otherwise obtain the benefits of the Exchange Account, including the earnings thereon, before the end of the Exchange Period, except that:

    **i.**  If the Exchangor has not identified Replacement Property by the end of the Identification Period in accordance with the terms of Section 4.A, then the Exchange Accounts shall be disbursed to Exchangor at any time after the end of the Identification Period; or

    **ii.**  If Exchangor has identified Replacement Property by the end of the Identification Period as provided in Section 4.A, then the Exchange Account shall be disbursed to Exchangor upon or after the receipt by Exchangor of all Replacement Property to which Exchangor is entitled to under this Agreement.

  The provisions of this Section 6.C are meant to incorporate and conform to Treasury Regulation Section 1.1031(k)-1(g)(6), and such Regulation shall control if any of the provisions of this Section 6.C are inconsistent therewith.

  **7.**  **Indemnification of Intermediary.** Exchangor agrees to indemnify, defend and hold Intermediary, its officers, employees, attorneys and agents, harmless from and against any and all costs, liabilities, losses, damages or injuries in any manner arising out of or incident to Intermediary's acquisition, holding or conveyance of any property, or Exchangor's participation in the tax-deferred exchange as provided herein, except to the extent that such costs, liabilities, losses, damages or injuries are due to Intermediary's gross negligence or willful misconduct.

  **8.**  **No Warranty on Tax Consequences.** Intermediary makes no representations or warranties, nor shall Intermediary bear any responsibility or liability concerning the federal or state tax law consequences to Exchangor of the transactions contemplated herein; including without limitation, the status of any Replacement Property as like kind property or the qualification of this transaction as a tax-deferred exchange pursuant to Section 1031 of the Internal Revenue Code or applicable state laws.

  **9.**  **Disaster Extensions**. If the Exchangor is entitled to relief for a Federally Declared Disaster, then the Identification Period and Exchange Period are automatically extended as provided in Rev. Proc. 2007-56. Exchangor shall have the sole responsibility to inform Intermediary in writing that Exchangor is entitled to such relief.

  **10.**  **Reassignment of Rights**. The rights under the Relinquished Property Agreement and the Replacement Property Agreement shall be deemed to be reassigned by Intermediary to Exchangor immediately following the closing of the transfer of the Relinquished Property or the acquisition of the Replacement Property, as the case may be.

  **11.**  **General Provisions.**

      **A.**    **Recitals.**  The recitals set forth at the beginning of this Agreement of any matters or facts shall be conclusive proof of their truthfulness and the terms and conditions stated in the recitals, if any, shall be deemed a part of this Agreement.

      **B.**    **Other Instruments**.  The parties shall, whenever and as often as reasonably requested by the other party, execute, acknowledge and deliver or cause to be executed, acknowledged and delivered any and all documents and instruments as may be necessary, expedient or proper in the reasonable opinion of the requesting party to carry out the intent and purposes of this Agreement, provided that the requesting party shall bear the cost and expense of such further instruments or documents (except that each party shall bear its own attorneys' fees).

      **C.**    **Construction**.  The provisions of this Agreement should be liberally construed to effectuate its purposes.  The language of this Agreement shall be construed simply according to its plain meaning and shall not be construed for or against either party, as each party has participated in the drafting of this Agreement and had the opportunity to have their counsel review it.  Whenever the context and construction so requires, all words used in the singular shall be deemed to be used in the plural, all masculine shall include the feminine and neuter, and vice versa.

      **D.**    **Captions, Headings, Exhibits and Abbreviations**.  The captions and headings of this Agreement are for convenience only and have no force or effect in the interpretation or construction of this Agreement.  Words indicated in parentheses, quotations or both signify an abbreviation for the previous set of words or terms, so that when the abbreviation is used within the Agreement, it shall have the same meaning as a full statement of the words or terms.  All exhibits attached to this Agreement are incorporated by this reference as though fully stated in this Agreement.

      **E.**    **Notices.**  All notices required or permitted to be given under this Agreement must be in writing and shall be delivered in person or by U.S. mail (postage prepaid) or by Federal Express or other similar overnight delivery service to the party to whom the notice is directed at the address of such party as follows:

      **To Exchangor:**    Anne L. Thart
                              **43741 37th Street**
                              **Lancaster, CA 93536**

      **To Intermediary:**    Southern California Exchange Services, LLC
                                **2150 Pickwick Drive, #499**
                                **Camarillo, CA 93011**

      **F.**    **Governing Law.**  Except to the extent otherwise required and mandatory due to the physical location of the Property, the validity and interpretation of this Agreement shall be governed by the laws of the State of California without giving effect to the principles of conflict of laws, with venue for all purposes proper only in the County of Santa Barbara, State of California.

      **G.**    **Attorney Fees.**  In the event that any legal action is necessary to enforce or interpret any term or provision of this Agreement, the prevailing party in such action shall be entitled to reasonable attorney's fees and costs incurred as a result of such action.

DocuSign Envelope ID: 554A4F5E-3044-470B-BA85-2679019D8DAD

  **H.** **Signatures - Counterparts**. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

  **I.** **Successors and Assigns**. This Agreement shall be binding on and shall inure to the benefit of the parties and their respective heirs, legal representatives, successors and permitted assigns, except as restricted by this Agreement.

  **J.** **Entire Agreement and Amendment.** With respect to the matters considered herein, this Agreement contains the entire understanding and agreement of the parties and there have been no promises, representations, agreements, warranties or undertakings by any of the parties, either oral or written, of any character or nature binding except as stated in this Agreement. This Agreement may be altered, amended or modified only by an instrument in writing, executed by the parties to this Agreement and by no other means. Each party waives their right to claim, contest or assert that this Agreement was modified, canceled, superseded or changed by any oral agreement, course of conduct, waiver or estoppel.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the date set forth above.

**EXCHANGOR**              **INTERMEDIARY**

**Southern California Exchange Services, LLC**
**a California limited liability company**

*Anne L. Thart, Trustee*  11/6/2022   By: *Megan Destito*
Anne L. Thart *             **Megan Destito, Owner**

* *As Trustee of the Anne L. Thart Living Trust dated July 1, 1998*

6

# EXHIBIT A

## Legal Description of Relinquished Property #1

The land hereinafter referred to is situated in the Area of Rosamond, County of Kern, State of CA, and is described as follows:

Lot 84 of Tract No. 5042, in the County of Kern, State of California, as per map recorded December 8, 1989 in Book 37 Pages 126 through 134, inclusive of maps, in the office of the County Recorder of said County. Except therefrom all oil, gas, minerals, and other hydrocarbon substances lying below the surface of said land, as provided in mesne documents of record.

APN: 251-402-10-00-9

## Legal Description of Relinquished Property #2

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

AN UNDIVIDED 1/43RD INTEREST IN AND TO ALL THAT PORTION OF LOT 1 OF TRACT NO. 40876, IN THE CITY OF LANCASTER, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1014 PAGES 91 THROUGH 93 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY SHOWN AND DEFINED AS COMMON AREA ON THE CONDOMINIUM PLAN RECORDED SEPTEMBER 19, 1990 AS INSTRUMENT NO. 1990-1610727 OFFICIAL RECORDS OF SAID COUNTY.

EXCEPT THEREFROM UNITS 1 TO 12 INCLUSIVE, FOLLOWED BY THE LETTERS A, B, C, OR D, AS DEFINED AND DELINEATED ON THE CONDOMINIUM PLAN RECORDED SEPTEMBER 19, 1990 AS INSTRUMENT NO. 1990-1610727 OFFICIAL RECORDS.

PARCEL 2:

UNIT 5A AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO IN PARCELS 1 AND 2 ABOVE AS FOLLOWS:

FOR YARD PURPOSES CATER THAT PORTION OF LOT 1 OF TRACT NO. 40876 SHOWN AND DEFINED AS EXCLUSIVE USE COMMON AREA 5A-Y ON SAID CONDOMINIUM PLAN.

APN: 3112-037-019

# EXHIBIT B

## Fee Schedule

| **Type of Deferred Exchange** | **Exchange Fee** |
|---|---|
| Simultaneous or Concurrent | $750 |
| Delayed | $850 |

# CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Santa Barbara, State of California, and not a party to the above-entitled action. On February 6, 2025, I served a true copy of the following document described as **MEGAN DESTITO'S COUNTER CLAIM** on the interested parties in this action in the manner indicated below:

| | |
|---|---|
| Brandon S. Reif<br>Rachel D. Dardashti<br>REIF LAW GROUP<br>315 S. Beverly Drive, Ste 315<br>Beverly Hills, CA 90212<br>docket@reiflawgroup.com<br>brief@reiflawgroup.com<br>rdardashti@reiflawgroup.com | ***Attorneys for Plaintiffs*** |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the that the foregoing is true and correct.

Executed on February 6, 2025, at Santa Barbara, California.

*Nolan O'Malley*
_____
Nolan O'Malley
*Legal Assistant*