Brandon S. Reif (SBN 214706)
Rachel D. Dardashti (SBN 292126)
**REIF LAW GROUP, P.C.**
315 S. Beverly Drive, Suite 315
Beverly Hills, CA 90212
Telephone: (310) 494-6500
Email: docket@reiflawgroup.com
breif@reiflawgroup.com
rdardashti@reiflawgroup.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

ANNE L. THART, an individual and
trustee of THE ANNE L. THART
LIVING TRUST DATED JULY 1, 1998;
RUSSELL CHADWICK MCALLISTER,
an individual and trustee of THE
MCALLISTER FAMILY TRUST; AMY
MCALLISTER, an individual and trustee
of THE MCALLISTER FAMILY
TRUST; JOSEPH A. PROCOPIO, an
individual and trustee of THE JOSEPH A.
PROCOPIO SR. FAMILY TRUST;
GLENN T. PINDER, an individual and
sole member of PINDER
ENTERPRISES, LLP,

        Plaintiffs,

    vs.

COLLIERS INTERNATIONAL GROUP,
INC., a Canadian corporation;
MILLCREEK COMMERCIAL
PROPERTIES, LLC, a Utah limited
liability company; MILLROCK
INVESTMENT FUND 1, LLC, a Utah
limited liability company; KEVIN LONG,
an individual; BRENT SMITH, an

CASE NO.: 2:24-cv-10876-CV-E

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS DOUG SCHEEL,
TROY SCHEEL AND MOUNTAIN
WEST COMMERCIAL, LLC'S
MOTION TO DISIMISS**

1

1  individual; DOUGLAS SCHEEL, an
   individual; TROY SCHEEL, an
2  individual; MOUNTAIN WEST
   COMMERCIAL, LLC, a Utah limited
3  liability company; MEGAN DESTITO,
   an individual; CAMS REALTY, LLC, a
4  Utah limited liability company; KGL
   ADVISORS, LLC, a Utah limited liability
5  company; SOUTHERN CALIFORNIA
   EXCHANGE SERVICES, LLC, a
6  California limited liability company, and
   DOES 1-10, inclusive,
7
8
          Defendants.
9

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN
WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION.................................................................................8

II.   FACTUAL BACKGROUND ...........................................................8

A.   Standard on Motion to Dismiss ............................................11

B.   The Court Has Personal Jurisdiction Over Defendants..........................12

    1.  Exchange Acts Provide Personal Jurisdiction Over Defendants..........12

    2.  Exercise of Supplemental Jurisdiction Is Proper...........................13

    3.  Jurisdictional Discovery Should be Permitted……………...………..13

C.   The Obligations of Sellers of Securities ...............................14

D.   The First Claim for 10b5 is Not Time Barred ........................16

E.   Plaintiffs' First and Second Claims for 10b5 Satisfies PSLRA and FRCP 9(b).....16

    1.  Claims Under 10b5-b…………………………………...……17

    2.  Claims for Deceptive Practices Under Rule 10b5(a), (c)……………..20

F.   The Fifth Claim for Breach of Fiduciary Duty is Well Pled ................23

G.   The Seventh Claim for Conversion is Proper..........................25

H.   The Eighth Claim for Constructive Fraud is Well Pled .........................26

I.    The Eleventh Claim for Unfair Competition is Proper ..........................26

J. If the Court grants the Motion, Leave to Amend Should be Granted ........................27

IV.  CONCLUSION .................................................................................28

# TABLE OF AUTHORITIES

## Cases

*Abdo v. Fitzsimmons*, No. 17-CV-00851-TSH, 2021 WL 616324  (N.D. Cal. Feb. 17, 2021) ........................................................................................................................22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................12

*Assilzadeh v. California Fed. Bank*, 82 Cal. App. 4th 399 (2000) ....................9, 10, 21, 25

A*vis Budget Grp., Inc. v. California State Teachers' Ret. Sys*., 552 U.S. 1162 (2008) .... 18

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) ......................15

*Bourassa v. Desrochers*, 938 F.2d 1056, 1057 (9th Cir. 1991) ........................................13

*Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787 (9th Cir. 1963) ...................28

*Brown v. Wells Fargo Bank, N.A. 168 Cal.App.4th 938* (2008)........................................24

*Canizaro v. Kohlmeyer & Co.*, 370 F.Supp. 282 (E.D. La. 1974)....................................16

*Cleveland v. Johnson*, 209 Cal.App.4th 1315 (2012)......................................................24

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................28

CV-22-02126-PHX-MTL, 2025 WL 371717 (D. Ariz. Feb. 3, 2025) ..............................22

*Digimarc, Corp.*, 552 F.3d 981 (9th Cir. 2009)..............................................................13

*Duffy v. Cavalier, 215 Cal.App.3d* 1517 (1989)..............................................................24

*Eminence Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048 (9th Cir. 2003)..............................28

*Everest Sec., Inc. v. S.E.C., 116 F.3d 1235, 1239 (8th Cir. 1997)* ............................19, 21

*Fireman's Fund Ins. Co. v. National Bank of Cooperatives*, 103 F3d 888 (9th Cir. 1996) ........................................................................................................................15

*Foman v. Davis*, 371 U.S. 178 (1962) ............................................................................28

*Fontana v. Haskin*, 262 F.3d 871 (9th Cir. 2001)...........................................................12

*Hanly v. Sec. & Exch. Comm'n*, 415 F.2d 589, 595–96 (2d Cir. 1969).......................9, 16

*Hasso v. Hapke*, 227 Cal.App.4th 107, 140 (2014)........................................................25

*Howey v. U.S.,* 481 F.2d 1187 (9th Cir. 1973)................................................................29

*Hsu v. Puma Biotechnology, Inc.*, 213 F.Supp.3d 1275 (C.D. Cal. 2016) .......................19

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN
WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

1    *In re Alphabet, Inc. Sec. Litig.,* 1 F.4th 687 (9th Cir. 2021) .............................................22

2    *In re Daou Sys., Inc.,* 411 F.3d 1006 (9th Cir. 2005) ........................................................19

3    In re Marsh & *Mclennan Companies, Inc. Sec. Litig.,* 501 F.Supp.2d 452 (S.D.N.Y. 2006)

4      ......................................................................................................................................20

5    *In re New Century,* 588 F.Supp.2d 1206 (C.D. Cal. 2008) .................................................19

6    *In re Quality Sys., Inc. Sec. Litig.,* 865 F.3d 1130, 1145 (9th Cir. 2017)..........................21

7    *In re VeriFone Holdings, Inc. Sec. Litig.,* 704 F.3d 694, 703 (9th Cir. 2012) .................13

8    *International Shoe Co. v. State of Wash., Office of Unemployment Compensation &*

9      *Placement,* 326 US 310 (1945) ........................................................................................15

10   *Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 340

11      F.Supp.3d 285 (S.D.N.Y. 2018) .......................................................................................19

12   *Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau,* 701 F.2d 1276 (9th Cir.

13      1983) ..................................................................................................................................29

14   *LockandLocate, LLC v. Hiscox Ins. Co.,* 549 F. Supp. 3d 1093 (C.D. Cal. 2021)...........28

15   *Loos v. Immersion Corp.,* 762 F.3d 880 (9th Cir. 2014) ...................................................18

16   *Lorenzo v. Securities & Exchange Commission,* 587 U.S. 71 (2019) ..............................22

17   *Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242 (5th Cir. 1997)......................................28

18   *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27 (2011) ...........................................19

19   *May v. Google LLC,* No. 24-CV-01314-BLF, 2024 WL 4681604 (N.D. Cal. Nov. 4,

20      2024) ..................................................................................................................................19

21   *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097 (9th Cir. 2008).......................12

22   *Merck & Co. v. Reynolds,* 559 U.S. 633 (2010) ..............................................................17

23   *Metzler Inv. GMBH v. Corinthian Colleges, Inc.,* 540 F.3d 1049 (9th Cir. 2008)...........19

24   *Mindys Cosms., Inc. v. Dakar,* 611 F.3d 590 (9th Cir. 2010)...........................................26

25   *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074 (9th Cir. 1990) ...................28

26   *Oaktree Principal Fund V, LP v. Warburg Pincus LLC,* No. CV-15-8574-PSG, 2016 WL

27      6782768, at *14 (C.D. Cal. Aug. 9, 2016) .......................................................................22

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN
WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

*Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708 (9th Cir.2001)........................28

*People v. Cole.*, 156 Cal. App. 4th 452 (2007)................................................23

*Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249 (1st Cir. 1996)..........................14

*Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168 (1st Cir.1995)................................14

*Salahutdin v. Valley of California, Inc.*, 24 Cal. App. 4th 555.........................24, 25

*S.E.C v. Criterion Wealth Management Services, Inc.,* 599 F.Supp.3d 932 (C.D. Cal.

    2022)..........................................................................................24

*Satey v. JP Morgan Chase & Co.*, 521 F.3d 1087 (9th Cir. 2008)..................................14

*SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180 (1963) ...............................24

*SEC v. North American Research and Development Corp.*, 424 F.2d 63 (2d Cir. 1970).16

*Sec. & Exch. Comm'n v. Earle*, No. 3:22-CV-01914-H-MDD, 2023 WL 2899529, at *7

    (S.D. Cal. Apr. 11, 2023)............................................................22, 23

*Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985)..............13

*Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040 (9th Cir. 2006)..................................18

*Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008) ..................................18

*Siracusano v. Matrixx Initiatives*, Inc., 585 F.3d 1167 (9th Cir. 2009)............................19

*Stoyas v. Toshiba Corp.*, 896 F.3d 933 (9th Cir.

2018)……………………………………………………...12, 13

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007)...........................12, 16, 19

*Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114 (9th Cir. 1994).......24

*Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal.App.2d 690 (1968)...................24

*United Ass'n Nat'l Pension Fund v. Carvana Co.*, No. CV-22-02126-PHX-MTL, 2024

    WL 5153343 (D. Ariz. Dec. 16, 2024)....................................................22

*United States v. Hougham,*364 U.S. 310, (1960)...............................................28

*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016) ..................18

*United Steelworkers of Am., AFL–CIO v. Mesker Bros. Indus., Inc.*, 457 F.2d 91 (8th Cir.

    1972)..........................................................................................29

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN
WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

*Vernazza v. S.E.C.*, 327 F.3d 851 (9th Cir. 2003) ........................................................24

*William Morris Endeavor Ent., LLC v. Writers Guild of Am.*, 478 F.Supp.3d 932 (C.D.
   Cal. 2020) ........................................................18

*York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP, Inc.*, 65 F.4th 459, 464 (9th Cir.
   2023) ........................................................17

## **Statutes**

15 U.S.C. § 78 ........................................................13

15 U.S.C. § 78u–4(b)(2)(a) ........................................................19

28 U.S.C. §1658(b) ........................................................17

Cal. Corp. §25210 ........................................................23

Fed. R. Civ. Proc. 9(b) ........................................................12

Section 10(b) ........................................................18

Section 27 of the 1934 Act ........................................................13

## **Rules**

10b5(a), (c) ........................................................21

17 CFR § 240.10b–5(b) ........................................................18

Rule 10-b5 ........................................................17, 18

UT Admin. Code Rev. 164-4-3 ........................................................2

Plaintiffs hereby submit their Opposition to Defendants Doug Scheel ("Doug"), Troy Scheel ("Troy") and Mountain West Commercial, LLC ("Mountain West" collectively "Mountain West Defendants") Motion to Dismiss First Amended Complaint.

## I.    **INTRODUCTION**

The First Amended Complaint establishes that Defendants Doug Scheel, Troy Sheel and Mountain West Commercial, LLC engaged with the defendants in a conspiracy to defraud Amy and Chad McAllister and their trust, The McAllister Family Trust.  They made material misrepresentations and omissions and were key players in the scheme to defraud and deceive Plaintiffs.

The Mountain West Defendants were particularly egregious when considering the elevated duties of sellers of securities. It has been long established that securities salespersons have a duty to complete due diligence before recommending an investment and must disclose if it lacks information about the security, as well as the risks which arise from the lack of information.  *Hanly v. Sec. & Exch. Comm'n*, 415 F.2d 589, 595–96 (2d Cir. 1969).  The requirement mirrors the due diligence requirement for real estate brokers and agents. S*ee Assilzadeh v. California Fed. Bank*, 82 Cal. App. 4th 399, 414–15 (2000).

Yet, the Mountain West Defendants claim that the facts asserted by Plaintiffs lack particularity and are impermissible group pleadings.   A cursory review of the First Amended Complaint establishes numerous facts as to the Mountain West Defendants' involvement in the fraud, in addition to their breaches of fiduciary duty, constructive fraud, constructive fraud and violation of the Unfair Competition Law.

The allegations clearly establish the Mountain West Defendants' wrongdoing and provide fair notice of the claims against them.  The Court should dismiss the pending Motion to Dismiss.

## II.    **FACTUAL BACKGROUND**

Defendants collectively engaged in a conspiracy to defraud Plaintiffs of their hard earned retirement funds.  (Dkt. 91, ¶90).

The Mountain West Defendants participated in the scheme to defraud and deceive Plaintiffs by making misrepresentations and omissions, recommending and selling tenant in common investments in the Crocket Property to Chad and Amy McAllister (the "McAllisters") and reaping the benefits of the fraud by collecting thousands of dollars of commissions and fees in connection with the sales.  In particular, the Mountain West Defendants formed fiduciary and confidential relationships with the McAllisters as their real estate agent and broker, inducing them to sell commercial property they owned, recommended that they invest their proceeds from the sale in the investment at issue, vouching for the professionalism and knowledge of Millcreek and stating that there was no risk because the McAllisters could sell their interests at any time, (*id*., ¶¶ 17-19, 81) and collected significant commissions and fees (*id*., ¶ 20, 30-31, 53).  The Mountain West Defendants' statements regarding Millcreek's professionalism and the lack of risk were false. (*Id*., ¶ 19).  They also falsely stated that the Property could be sold at any time, had invested in Millcreek Properties, may invest in the Crocket Property and that the Crocket Property would be professionally managed such that the McAllisters would not have to deal with the Property.  (*Id.*, ¶ 54).  They also falsely stated that they would not receive compensation in connection with the sale of the Crocket Property to the McAllisters. (*Id.*)

The Mountain West Defendants made numerous additional material misrepresentations to the McAllisters when reviewing the Offering Memorandum with Chad McAllister in January 2023.  They reiterated statements in the Offering Memorandum including:

- "Pulse Healthcare System is made up of nine clinic locations across the state of Texas.  The twelve healthcare providers at Pulse put one-on-one relationship with their patients at the core of what they do. … Pulse prioritizes state-of-the-art resources.  The clinics are equipped with the best technology and treatment options to ensure that patients are feeling better without delay."

- "Pulse Healthcare includes a well-performing vascular surgery portfolio."

- "4 additional locations Ideally situated to meet the demand for vascular surgery."
- "15-Year Sale Leaseback on Triple Net (NNN) Leases."
- "Full Corporate Guarantee from Pulse Healthcare."
- "Pandemic, Recession and Internet Resistant Tenant with 8 clinics throughout the Greater Houston area."
- "Landlord Responsibilities None"
- "Insurance / Taxes/CAM/Utilities Responsibility of Tenant"

(*Id.*, ¶ 78).

The Mountain West Defendants also omitted material information that would be important to any investor including:

- The tenant was not an established business with positive operating history, but a startup that was funded by Millrock to purchase equipment and machinery necessary to operate the surgery center (*id.*, ¶76);
- The Property was not professionally managed but had hired a lease administrator (*id.*, ¶75);
- The tenant did not operate a surgery center from the Crocket Property (*id.*, ¶ 85);
- The tenant was insolvent, unprofitable and financially unsustainable (*id.*, ¶¶ 84d, 86);
- The price of the property was not commensurate with the value (*id.*, ¶¶ 84(d), 90);
- They did not conduct any due diligence on the property (*id.*, ¶84c).

The Mountain West Defendants' actions caused the McAllisters at least $2,000,000 in damages.

//

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

### III.    **LEGAL ARGUMENT**

#### A.    **Standard on Motion to Dismiss**

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  The Court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007) (emphasis added). The Court will also "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Id. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr*., 521 F.3d 1097, 1104 (9th Cir. 2008).

Notably, "Pleadings need suffice only to put the opposing party on notice of the claim. All pleadings shall be construed as to do substantial justice, and [n]o technical forms of pleading ... are required. Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001) (internal citations and quotations omitted).

While Fed. R. Civ. Proc. 9(b) requires heightened pleading of fraud claims, it does not require plaintiff to "provide every factual detail supporting its fraud claim." S.E.C. v. Ficeto, 839 F.Supp.2d 1101, 1105 (C.D. Cal. 2011), abrogated by *Stoyas v. Toshiba Corp., on other grounds*, 896 F.3d 933 (9th Cir. 2018). It is sufficient to allege each defendant's role, the specific fraudulent acts, and how the acts constitute fraud.  *See id.*

In the context of the PSLRA, examination of the complaint involves the "dual inquiry" of, "whether any of the plaintiff's allegations, standing alone, are sufficient to

create a strong inference of scienter," and a "'holistic' review of the same allegations to
determine whether the insufficient allegations combine to create a strong inference of
intentional conduct or deliberate recklessness." *Zucco Partners, LLC v. Digimarc, Corp.*,
552 F.3d 981, 992 (9th Cir. 2009). The Ninth Circuit has further clarified the two-step
analysis is appropriate as long as it "does not unduly focus on the weakness of individual
allegations to the exclusion of the whole picture"; alternatively, it may conduct only a
holistic review, mindful that it does not "simply ignore the individual allegations and the
inferences drawn from them." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694,
703 (9th Cir. 2012).

## B.    The Court Has Personal Jurisdiction Over Defendants

### 1.    Exchange Acts Provide Personal Jurisdiction Over Defendants

15 U.S.C. § 78aa provides: "The district courts of the United States and the United
States courts of any Territory or other place subject to the jurisdiction of the United
States shall have exclusive jurisdiction of violations of this chapter or the rules and
regulations thereunder, and of all suits in equity and actions at law brought to enforce any
liability or duty created by this chapter or the rules and regulations thereunder."

"Personal jurisdiction and venue in this case are governed by Section 27 of the
1934 Act. Section 27 confers jurisdiction in the district courts over violations of federal
securities law. Civil suit may be brought in any district 'wherein any act or transaction
constituting the violation occurred" or "wherein the defendant is found or is an inhabitant
or transacts business.' Section 27 also provides for nationwide service of process for
claims of violations of federal securities law."  *Bourassa v. Desrochers*, 938 F.2d 1056,
1057 (9th Cir. 1991). "[S]o long as a defendant has minimum contacts with the United
States, Section 27 of the Act confers personal jurisdiction over the defendant in any
federal district court." *Id.*, at 1058 (*citing Securities Investor Protection Corp. v. Vigman*,
764 F.2d 1309, 1316 (9th Cir. 1985).

The First Amended Complaint adequately alleges violations of the Exchange Act

by Defendants. Therefore, since Defendants were served in the United States (Dkt. 19, 23, 24). As such, the Court has personal jurisdiction over Defendants.

### 2.  Exercise of Supplemental Jurisdiction Is Proper

"A federal court exercising jurisdiction over an asserted federal-question claim must also exercise supplemental jurisdiction over asserted state-law claims that arise from the same nucleus of operative facts." *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256 (1st Cir. 1996). "In a federal-question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion." Id. at 256-7 (citing 28 U.S.C. § 1367(c)(3)). In deciding whether or not to retain jurisdiction on such an occasion, the trial court must take into account concerns of comity, judicial economy, convenience, fairness, and the like. *See Satey v. JP Morgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008); *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995).

In this case, the Court exercise its discretion to retain the state law claims even if the Court dismisses the federal securities law claims.  The Mountain West Defendants were involved in the unlawful sale of securities by way of misrepresentations and omissions to retail investors. In doing so, they acted in concert with the other Defendants. dismiss the state law claims would be waste of judicial resources in that the claims would need to be pursued in a different court with duplicative discovery, depositions and similar trial proceedings. Comity, judicial economy, fairness and convenience would be best served by retaining jurisdiction of all claims.

### 3.  Jurisdictional Discovery Should Be Permitted

While the Mountain West Defendants contend that the Court lacks general and specific jurisdiction over the Mountain West Defendants, it is clear that the Exchange Act provides for jurisdiction in this case. In the event that the Court determines that there are not sufficient allegations of securities fraud, the Court should permit jurisdictional

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

discovery to allow Plaintiffs to discover facts supporting jurisdiction.  While the
Mountain West Defendants assert in their declarations[1] that they do not hold professional
licenses in California it does not follow that they do not have minimum contacts with
California (*International Shoe Co. v. State of Wash., Office of Unemployment
Compensation & Placement*, 326 US 310, 316 (1945)) or do not purposefully avail
themselves of the benefits and privileges of conducting activities in California (*Fireman's
Fund Ins. Co. v. National Bank of Cooperatives*, 103 F3d 888, 894 (9th Cir. 1996)).
Indeed, the basis of the allegations in this case is that the Mountain West Defendants
conducted activities including selling securities for which they were not properly
licensed.

        To the extent that Defendants have business contacts in California, including
clients to whom they have recommended Millcreek investments, this may be sufficient to
establish jurisdiction over Defendants in California.  *See Axiom Foods, Inc. v. Acerchem
Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) ("There are three requirements for a court
to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must
either purposefully direct his activities toward the forum does or purposefully avail[ ]
himself of the privileges of conducting activities in the forum; (2) the claim must be one
which arises out of or relates to the defendant's forum-related activities; and (3) the
exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be
reasonable.").  Such information would wholly be in the possession, custody and control
of Defendants requiring formal discovery.

## C.    The Obligations of Sellers of Securities

        As a threshold matter, Plaintiffs allege that the Mountain West Defendants sold
securities to the McAllisters and received commissions in connection with each
transaction. (*Id*., ¶ 20, 30-31, 53).  Therefore, for the purposes of the pleading stage, the
Court must accept as true that the Mountain West Defendants were sellers of securities

---

[1] (*See* Dkt. 110-1, 110-2, 110-3).

and bound by the law and obligations applying to sellers of securities. *Tellabs, Inc., supra*, 551 U.S. at 322.

The securities laws provide stringent responsibilities for truthful disclosure of material facts by salespeople. *Hanley v. Securities and Exchange Commission* outline these duties succinctly.  In *Hanley*, the Second Circuit explained: "[S]alesmen are 'under a duty to investigate, and their violation of that duty brings them within the term 'willful' in the Exchange Act.' Thus, a salesman cannot deliberately ignore that which he has a duty to know and recklessly state facts about matters of which he is ignorant. He must analyze sales literature and must not blindly accept recommendations made therein. The fact that his customers may be sophisticated and knowledgeable does not warrant a less stringent standard." *Hanley v. Sec. & Exch. Comm'n*, 415 F.2d 589, 595–96 (2d Cir. 1969) (emphasis added).  In its opinion, the Court concluded, "In summary, the standards by which the actions of each petitioner must be judged are strict.  Where the salesman lacks essential information about a security, he should disclose this as well as the risks which arise from his lack of information." *Id.* (emphasis added); *see also SEC v. North American Research and Development Corp.*, 424 F.2d 63,84 (2d Cir. 1970); *Canizaro v. Kohlmeyer & Co.*, 370 F.Supp. 282, 289 (E.D. La. 1974), aff'd, 512 F.2d 484 (5th Cir. 1975) ("a broker who recommends a security or who volunteers an "investment opinion" or makes a prediction in order to effect a sale or purchase must have a reasonable basis for what he tells his customer.")

The Mountain West Defendants encouraged the McAllisters to rely on them by holding themselves out as experts and claiming that the tenant in common investment had no risk and could be sold at any time.  (Dkt. 91, ¶¶ 17-19). If Plaintiffs had known that the Mountain West Defendants had not done any investigation and they had the potential to lose their investment entirely, it would have undermined the Mountain West Defendants' representations that Plaintiffs relied upon in purchasing the investments.

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

### D. The First Claim for 10b5 is Not Time Barred

28 U.S.C. §1658(b) provides: "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws… may be brought not later than the earlier of--(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." Federal Courts have consistently held that 28 U.S.C. §1658 sets forth the statute of limitations for private causes of action for violation of Rule 10b5. *See e.g. Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010) ("This case concerns the timeliness of a complaint filed in a private securities fraud action. The complaint was timely if filed no more than two years after the plaintiffs "discover[ed] the facts constituting the violation.""); *York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP, Inc*., 65 F.4th 459, 464 (9th Cir. 2023) ("The statute of limitations at issue [for 10b5 claims] is contained in 28 U.S.C. § 1658(b)(1). It provides that private actions alleging securities fraud must be brought no more than "2 years after the discovery of the facts constituting the violation" of securities laws.").

The First Claim alleges securities fraud against Defendants and violation of Rule 10b5(b).  Thus, 28 U.S.C. §1658(b) applies. The First Claim for violation of Rule 10b5 is not time barred.[2]

### E. Plaintiffs' First and Second Claims for 10b5 Satisfies PSLRA and FRCP 9(b)

Plaintiffs allege claims for securities fraud under Rules 10-b5 (a), (b) and (c). "To implement § 10(b), the SEC promulgated Rule 10b–5, 17 CFR § 240.10b–5. Rule 10b–5 is composed of three parts that describe the type of conduct prohibited by § 10(b). The second part proscribes the making of "any untrue statement of a material fact" or the

---

[2] The Mountain West Defendants appear to contend that the First Claim is for violation of Section 12(a)(1) (Dkt. 110, 19:14-16), but a cursory review of the First Amended Complaint confirms that the First Claim is for violation of Rule 10b5(b). (Dkt. 91, 30:10-31:22).

omission of any material fact that is necessary in order to make the statements made not misleading. Rule 10b–5(b), 17 CFR § 240.10b–5(b). The first and third parts make it unlawful for any person "to employ any device, scheme, or artifice to defraud" or "to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1046 (9th Cir. 2006), cert. granted, judgment vacated sub nom. A*vis Budget Grp., Inc. v. California State Teachers' Ret. Sys*., 552 U.S. 1162 (2008), and vacated sub nom. *Simpson v. Homestore.com, Inc*., 519 F.3d 1041 (9th Cir. 2008).

### 1. <u>Claims Under 10b5-b</u>

To show securities fraud under Section 10(b) and Rule 10b–5 of the Securities Exchange Act, plaintiffs must allege facts sufficient to establish (1) a material misrepresentation or omission; (2) made with scienter, i.e., a wrongful state of mind; (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance upon the misrepresentation; (5) economic loss; and (6) loss causation. *Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014), amended (Sept. 11, 2014).

With regards to alleged omissions, particularity standards are relaxed and only require content of omission, where it could have been or should have been revealed and representative examples. *See William Morris Endeavor Ent., LLC v. Writers Guild of Am*., 478 F.Supp.3d 932, 943–44 (C.D. Cal. 2020). Plaintiffs do not have an obligation to identify representative examples of false statements to support every allegation. *United States v. United Healthcare Ins. Co*., 848 F.3d 1161, 1180 (9th Cir. 2016) ("a complaint need not allege "a precise time frame," "describe in detail a single specific transaction" or identify the "precise method" used to carry out the fraud. The complaint also need not "identify representative examples of false claims to support every allegation.") (internal citations omitted).

"[F]alsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, and the two requirements may be combined into a

unitary inquiry under the PSLRA." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir.
2005) (quotation marks omitted); *Hsu v. Puma Biotechnology, Inc.*, 213 F.Supp.3d 1275,
1286 (C.D. Cal. 2016). "[F]ailure to discover relevant information about the securities
[salespeople] were selling, amounted to recklessness sufficient to establish the requisite
scienter." *Everest Sec., Inc. v. S.E.C., 116 F.3d 1235, 1239 (8th Cir. 1997)*. To
adequately plead scienter under the PSLRA, the complaint must "state with particularity
facts giving rise to a strong inference that the defendant acted with the required state of
mind." 15 U.S.C. § 78u–4(b)(2)(a). Scienter requires a state of mind as one that intends to
deceive, manipulate, or defraud or made with intentional or deliberate recklessness. *See
Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008);
*Siracusano v. Matrixx Initiatives*, Inc., 585 F.3d 1167, 1180 (9th Cir. 2009), aff'd sub
nom. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) (quotations and citations
omitted). "The inferences that the defendant acted with scienter need not be ... of the
'smoking-gun' genre." *Tellabs, Inc. v. Makor Issues &Rights, Ltd., 551 U.S. 308, 324
(2007)*.

   Although Defendants' Motion claims that the First Amended Complaint constitutes
a "group" or "shotgun" pleading, a review of First Amended Complaint demonstrates
otherwise.  *See May v. Google LLC*, No. 24-CV-01314-BLF, 2024 WL 4681604, at *7
(N.D. Cal. Nov. 4, 2024) ("But so-called "group pleading" is not fatal if the complaint
gives defendants fair notice of the claims against them."); *In re New Century*, 588
F.Supp.2d 1206, 1224 (C.D. Cal. 2008) (holding that as long as the Complaint alleges
violations of statements for defendants that do not rest on group pleading, there is
sufficient specificity to support false statements and omissions under PSLRA*); Iowa Pub.
Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 340 F.Supp.3d 285,
317 (S.D.N.Y. 2018) ("Group pleading 'is insufficient to withstand review on a motion to
dismiss ... [where there are] no factual allegations in the complaint to connect each, or
any, of the group defendants, directly to the conspiracy[.]' Because the Amended

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN
WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

Complaint alleges each Defendant's participation separately, it is not impermissible group pleading to refer to their collective actions in furtherance of the conspiracy using a more general phrase such as 'the Prime Broker Defendants.'"); see also In re Marsh & *Mclennan Companies, Inc. Sec. Litig.*, 501 F.Supp.2d 452, 479 (S.D.N.Y. 2006) ("Defendants' argument that group pleading is no longer permissible under the PSLRA is rejected.").

The First Amended Complaint specifically alleges that the Mountain West Defendants made the following misrepresentations during the sales process (i.e. before Plaintiffs purchased their TIC interests):

- The Property could be sold at any time. (Dkt. 91, ¶19).
- The investment had no risk. (*Id.*)
- Doug and Troy had personally invested in Millcreek Properties and may invest in the Crocket Property. (*Id.*)
- The Crocket Property would be professionally managed such that the McAllisters would not have to deal with the Property.  (*Id.*, ¶ 54).
- They would not receive compensation in connection with the sale of the Crocket Property to the McAllisters. (*Id.*, ¶19).

Each of these misrepresentations were made in the sales process before the McAllisters purchased their TIC interests.

The First Amended Complaint also alleges that the Mountain West Defendants, along with the other defendants, omitted and failed to disclose the following material facts as a part of the fraudulent scheme and deceptive practices that defendants collectively employed:

- The tenant was not an established business with positive operating history, but a startup that was funded by Millrock to purchase equipment and machinery necessary to operate the surgery center (*id.*, ¶76);
- The Property was not professionally managed but had hired a lease

19

administrator (*id.*, ¶75);

- The tenant did not operate a surgery center from the Crocket Property (*id.*, ¶ 85);

- The tenant was insolvent, unprofitable and financially unsustainable (*id.*, ¶¶ 84d, 86);

- The price of the property was not commensurate with the value (*id.*, ¶¶ 84(d), 90);

- They did not conduct any due diligence on the property (*id.*, ¶84c).

To be sure, the law is clear that the failure to conduct due diligence into the security before selling and/or recommending it to investors is sufficient to allege recklessness as a matter of law. *See Everest Sec., Inc. v. S.E.C., supra*, 116 F.3d at 1239; *Novak v. Kasaks,* 216 F.3d 300, 311 (2d Cir. 2000) (strong inference of recklessness "may arise where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud [ ] (2) engaged in deliberately illegal behavior [ ]; (3) knew facts or had access to information suggesting that their public statements were not accurate[ ]; or (4) failed to check information they had a duty to monitor, [ ]."); *In re Quality Sys., Inc. Sec. Litig*., 865 F.3d 1130, 1145 (9th Cir. 2017) (Particular allegations that a defendant was aware of or "had actual access to the disputed information raise a strong inference of scienter.")

## 2.  Claims for Deceptive Practices under Rule 10b5(a), (c)

"Subsection (a) of [10b5] makes it unlawful to employ any device, scheme, or artifice to defraud and subsection (c) makes it unlawful to engage in any act, practice, or course of business that operates...as a fraud or deceit. Under subsection (a), [a] device is simply that which is devised, or formed by design; a scheme is a project, plan, or program of something to be done; and an artifice is an artful stratagem or trick. [A] non-speaking actor who engages in a scheme to defraud has used or employed a deceptive device within the meaning of § 10(b).  The words act and practice in subsection (c) are

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

similarly expansive. An act is a doing or thing done, and a practice is an action or deed. Together, [t]hese provisions capture a wide range of conduct. While the second paragraph of Rule 10b-5 specifies the making of an untrue statement...[t]he first and third subparagraphs are not so restricted." *Abdo v. Fitzsimmons*, No. 17-CV-00851-TSH, 2021 WL 616324, at *10 (N.D. Cal. Feb. 17, 2021) (internal citations and quotations omitted).

Elements of scheme liability pursuant to 10b5(a), (c) include: "(1) use or employment of any manipulative or deceptive device or contrivance; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance upon the deceptive or manipulative act by investors; (5) economic loss; and (6) loss causation." *United Ass'n Nat'l Pension Fund v. Carvana Co.*, No. CV-22-02126-PHX-MTL, 2024 WL 5153343, at *19 (D. Ariz. Dec. 16, 2024), reconsideration denied, No. CV-22-02126-PHX-MTL, 2025 WL 371717 (D. Ariz. Feb. 3, 2025). "[G]iven that the exact mechanism of the scheme is likely to be unknown to the plaintiffs, allegations of the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants are sufficient for alleging participation." Id. (internal citations and quotations omitted). Notably, **the PSLRA does not apply to 10b5(a), (c) claims**. *See Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, No. CV-15-8574-PSG, 2016 WL 6782768, at *14 (C.D. Cal. Aug. 9, 2016).

The Mountain West Defendants cite *In re Alphabet, Inc. Sec. Litig.,* 1 F.4th 687, 709 (9th Cir. 2021) and *Sec. & Exch. Comm'n v. Earle*, No. 3:22-CV-01914-H-MDD, 2023 WL 2899529, at *7 (S.D. Cal. Apr. 11, 2023) for the proposition that the Second Claims for Scheme Liability claim (under Rule 10b5(a) and 10b5(c)) is not well pled because it does not comply with the pleading requirements of Rule 10b5(b), but neither of these cases support this contention. Rather both *In re Alphabet* and *Earle* as well as *Lorenzo v. Securities & Exchange Commission*, 587 U.S. 71 (2019), which *In re Alphabet* and *Earle* rely on, all hold that claims under 10b5(a), (c) and 10b5(b) have different pleading requirements and the law does not foreclose one claim at the expense of another. *In re Alphabet,* 1 F.4th 687 at (9th Cir. 2021) ("Alphabet's argument that Rule 10b-5(a)

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

and (c) claims cannot overlap with Rule 10b-5(b) statement liability claims is foreclosed by *Lorenzo*, which rejected the petitioner's argument that Rule 10b-5(a) and (c) "concern 'scheme liability claims' and are violated only when conduct other than misstatements is involved." Rather, *Lorenzo* explained that "considerable overlap" exists among the subsections of Rule 10b-5 and held that disseminating false statements "ran afoul of subsections (a) and (c)."); *Earle*, 2023 WL 2899529, at *7 (denying on motion to dismiss 10b5(a), (c)); *Lorenzo*, 587 U.S. at 79 (rejecting argument that "scheme liability claims" and are violated only when conduct other than misstatements is involved).

The Mountain West Defendants participated in the deceptive scheme by recommending the TIC investments to the McAllisters, assuring them that the investment had no risk and stating that the investment could be sold at any time without any reasonable basis for believing these statements to be true as they had conducted no due diligence or investigation into the investment.  Moreover, they received commissions in connection with the McAllisters investment in violation of state and federal laws which require sellers of securities to be properly licensed. *See* Cal. Corp. §25210; *People v. Cole.*, 156 Cal. App. 4th 452,478-9 (2007) (selling securities without being licensed violates Cal. Corp. §25210); UT Admin. Code Rev. 164-4-3.

Notably, the purpose of licensing requirements is to protect investors like the McAllisters.  As Courts routinely acknowledge, transaction-based compensation suggests that a party must register as a broker because it "can encourage high pressure sales tactics [in conflict] with the interests of his or her client." *Sec. & Exch. Comm'n v. Earle*, 751 F.Supp.3d 1044, 1055–56 (S.D. Cal. 2024) (citing *SEC v. Murphy*, 50 F.4th 832, 846 (9th Cir. 2022) (internal quotation marks omitted); *EdgePoint Capital Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 57 n.5 (1st Cir. 2021) ("Transaction-based compensation is a hallmark indication that a party has acted as a broker and must register because it represents a potential incentive for abusive sales practices that registration is intended to regulate and prevent." (internal quotation marks removed)).

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN
WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### F.    The Fifth Claim for Breach of Fiduciary Duty is Well Pled

The Mountain West Defendants seek to dismiss the claim for breach of fiduciary duty is duplicative of the negligence claim.  However, the Mountain West Defendants cite no applicable case law or statute that provides that breach of fiduciary duty and negligence claims cannot coexist.

In fact, California law is clear that breach of fiduciary duty and negligence claims may co-exist (even based on the same conduct), but result in a different measure of damages based on the existence of a fiduciary duty. *See Salahutdin v. Valley of California, Inc.*, 24 Cal. App. 4th 555, 567 (holding that benefit of the bargain damages are appropriate for breach of fiduciary duty rather than out of pocket damages which is appropriate for negligence).

It is well settled law that broker dealers, investment advisors, and securities professionals owe their clients a fiduciary duty to act in the clients' best interests. *See SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191, 194, 201 (1963) (United States Supreme Court recognizes investment advisers as fiduciaries); *Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114, 1122 (9th Cir. 1994) ("An investment advisor is always a fiduciary."); *S.E.C v. Criterion Wealth Management Services, Inc.*, 599 F.Supp.3d 932, 951  (C.D. Cal. 2022) (citing *Vernazza v. S.E.C.*, 327 F.3d 851, 860 (9th Cir. 2003) ("as a matter of law, when [defendants] discussed whether an investor client should invest in a private placement, the advisability of the investment, and the effect of that investment on the client's overall portfolio, they were acting as investment advisers, and thus owed fiduciary duties to their clients."); *see also  Brown v. Wells Fargo Bank, N.A. 168 Cal.App.4th 938, 959-960*  (2008) (agents and stockbrokers are fiduciaries as a matter of law); *Duffy v. Cavalier, 215 Cal.App.3d* 1517, 1531 (1989) (quoting *Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal.App.2d 690, 708–709 (1968) (recognizing that an investment adviser is a fiduciary)); *Cleveland v. Johnson*, 209 Cal.App.4th 1315, 1339 (2012) ("it has long been held that promoters are fiduciaries . . .

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

[they] occupy a position of trust and confidence."); *Hasso v. Hapke*, 227 Cal.App.4th 107, 140 (2014) ("The investment advisor/client relationship is one such relationship, giving rise to a fiduciary duty as a matter of law.")

Real estate agents and brokers owe fiduciary duties to their clients as a matter of law.

> T]he broker has a fiduciary duty to investigate the material facts of the transaction, and he cannot accept information received from others as being true, and transmit it to the principal, without either verifying the information or disclosing to the principal that the information has not been verified. Because of the fiduciary obligations of the broker, the principal has a right to rely on the statements of the broker, and if the information is transmitted by the broker without verification and without qualification, the broker is liable to the principal for negligent misrepresentation.

*Salahutdin*, 24 Cal. App. 4th at 562–63. "[T]he disclosure duty is a general duty imposed on the agent, and whether a breach of that duty constitutes negligence or fraud depends on the particular circumstances of each case. Consequently, there is no clear line establishing when a fiduciary's breach of the duty of care will be merely negligent and when it may be characterized as constructive fraud." *Id*. at 563.

Similarly, *Assilzadeh v. California Fed. Bank* explains:

> [A] broker's fiduciary duty to his client requires the highest good faith and undivided service and loyalty. The broker as a fiduciary has a duty to learn the material facts that may affect the principal's decision. He is hired for his professional knowledge and skill; he is expected to perform the necessary research and investigation in order to know those important matters that will affect the principal's decision, and he has a duty to counsel and advise the principal regarding the propriety and ramifications of the decision. The agent's duty to disclose material information to the principal includes the duty to disclose reasonably obtainable material information. The facts that a broker must learn, and the advice and counsel required of the broker, depend on the facts of each transaction, the knowledge and the experience of the principal, the questions asked by the principal, and the nature of the property and the terms of sale. The broker must place himself in the position of the principal and ask himself the type of information required for the principal to make a well-informed decision. This obligation requires investigation of facts not known to the agent and disclosure of all material facts that might

24

reasonably be discovered.

*Assilzadeh v. California Fed. Bank*, 82 Cal. App. 4th 399, 414–15 (2000).

In this case, both the factual allegations clearly allege breach of fiduciary duty by the Mountain West Defendants. The McAllisters allege that the Mountain West Defendants acted as their real estate broker and agent, failed to conduct a reasonable investigation or conduct any due diligence, did not properly advise the McAllisters and did not disclose material information either known to them or reasonably obtainable. (Dkt. 91, ¶ 156). Moreover, they failed to advise of conflicts of interest known to them. *Id*.

Based on the applicable law, and the allegations stated in the First Amended Complaint, it is clear that Plaintiffs have properly pled a claim for breach of fiduciary duty against the Mountain West Defendants.

### G.    The Seventh Claim for Conversion is Proper

Contrary to the Mountain West Defendants assertions, Plaintiffs have properly asserted all elements for conversion against the Mountain West Defendants.

"[A]ny act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion.... Where the conversion is the result of the acts of several persons, which, though separately committed, all tend to the same end, there is a joint conversion. ... If the principal is a wrong-doer, the agent is a wrong-doer also." *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010).

Plaintiffs allege that "Defendants received a portion of the proceeds of Plaintiffs' TIC investments with knowledge that such funds were identified to particular Properties with the Plaintiff TIC Owners of that property." (Dkt. 91, ¶174). In particular, the Mountain West Defendants received commissions from the proceeds from the from the sale of the McAllisters commercial property that was to be fully invested in the Crocket Property by way of a 1031 exchange. (*Id*., ¶¶ 19, 20, 53) The Mountain West Defendants

did not properly disclose these commissions or the use of funds and affirmatively and falsely stated that they would not be compensated in connection with the transaction. (*Id*., ¶¶19, 72). Clearly, these allegations comply with the notice pleading standard set forth in Fed. R. Civ. Proc. 8.

## H.    The Eighth Claim for Constructive Fraud is Well Pled

The Mountain West Defendants claim that the claim for constructive fraud fails to particularly allege who made each misrepresentation and their role in the fraud.  As set forth above in section III(E), (F), the First Amended Complaint properly alleges statements misrepresentations and omissions by the Mountain West Defendants as salespeople and their communications with the McAllisters, the dates of communications (January 6, 2023) by Doug and Troy Scheel, registered agents with Mountain West, to the McAllisters, the content of statements and why they were misleading or false and whether by telephone or in-person.  Further, it clearly alleges that the Mountain West Defendants had a fiduciary duty of disclosure and investigation by virtue of their role as non-licensed investment advisors and real estate brokers and agents. Taken together, there are sufficient factual allegations to support constructive fraud.

## I.    The Eleventh Claim for Unfair Competition is Proper

The Mountain West Defendants also argue that the claim for unfair competition is improper. As set forth above, Plaintiffs allege a number of facts setting forth unfair, unlawful and fraudulent practices by the Mountain West Defendants. In addition to numerous misrepresentations and omissions discussed above, they sold securities to retail investors in violation of the law without being properly licensed, failed to conduct any investigation into the Property, received commissions without proper disclosure, provided insufficient information for the McAllisters to evaluate the risks of the investment and engaged in deceptive practices to sell securities without proper oversight and investigation.  Moreover, the Mountain West Defendants fail to challenge, and therefore, concede that Plaintiffs have properly asserted claims of negligent

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

misrepresentation and professional negligence against them which are sufficient to support a claim for unfair competition. *See LockandLocate, LLC v. Hiscox Ins. Co.*, 549 F. Supp. 3d 1093, 1103 (C.D. Cal. 2021) ("[Plaintiff"] has adequately pleaded a fraudulent and negligent misrepresentation claim and thus has adequately pleaded a Section 17200 claim based on fraud."). Accordingly, the claim for unfair competition is proper.

### J. If the Court grants the Motion, Leave to Amend Should be Granted

"The purpose of pleading under the Rules 'is to facilitate a proper decision on the merits.' *Conley v. Gibson*, 355 U.S. 41, 48 (1957). To this end, Rule 15 'was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result.' *United States v. Hougham*,364 U.S. 310, 316 (1960). 'If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought Ato be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' *Foman v. Davis*, 371 U.S. 178, 182 (1962)." *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789–90 (9th Cir. 1963) (internal citations included).

"'[L]eave shall be freely given when justice so requires.' This policy is 'to be applied with extreme liberality.' *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir.2001) (quoting *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990))." *Eminence Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003) (finding that failure to grant leave to file Second Amended Complaint was abuse of discretion). Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend. *See Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997). A

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN
WEST COMMERCIAL, LLC'S MOTION TO DISIMISS

simple denial of leave to amend without any explanation by the district court is subject to reversal. Such a judgment is 'not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.' *Foman, supra*, 371 U.S. at 182, 83 S.Ct. 227; *Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292–93 (9th Cir. 1983) (noting "where the record does not clearly dictate the district court's denial, we have been unwilling to affirm absent written findings"); *Rolf v. City of San Antonio*, 77 F.3d 823, 828–29 (5th Cir.1996); *United Steelworkers of Am., AFL–CIO v. Mesker Bros. Indus., Inc*., 457 F.2d 91, 94 (8th Cir. 1972)." Id. (internal citations included) (emphasis added).

"The purpose of pleadings is 'to facilitate a proper decision on the merits,' and not to erect formal and burdensome impediments in the litigation process." *Howey v. U.S.*, 481 F.2d 1187, 1190 (9th Cir. 1973). Liberality in granting leave to amend is "especially important in the context of PSLRA" where "drafting a cognizable complaint can be a matter of trial and error." *Id.* at 1052.

## IV.  <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants Doug Scheel, Troy Scheel and Mountain West Commercial, LLC's Motion to Dismiss First Amended Complaint.  Should the Court grant the Motion, Plaintiffs respectfully request that the Court do so without prejudice and grant leave for Plaintiffs to file an amended complaint.


 Dated: May 16, 2025                                  **REIF LAW GROUP, P.C.**


                                                      *Brandon S. Reif*
                                                      _____
                                                      Brandon S. Reif
                                                      Rachel D. Dardashti

                                                      Attorneys for Plaintiffs

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO DEFENDANTS DOUG SCHEEL, TROY SCHEEL AND MOUNTAIN WEST COMMERCIAL, LLC'S MOTION TO DISIMISS