Brandon S. Reif (SBN 214706)
Rachel D. Dardashti (SBN 292126)
**REIF LAW GROUP, P.C.**
315 S. Beverly Drive, Suite 315
Beverly Hills, CA 90212
Telephone: (310) 494-6500
Email: docket@reiflawgroup.com
breif@reiflawgroup.com
rdardashti@reiflawgroup.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE L. THART, an individual and trustee of THE ANNE L. THART LIVING TRUST DATED JULY 1, 1998; RUSSELL CHADWICK MCALLISTER, an individual and trustee of THE MCALLISTER FAMILY TRUST; AMY MCALLISTER, an individual and trustee of THE MCALLISTER FAMILY TRUST; JOSEPH A. PROCOPIO, an individual and trustee of THE JOSEPH A. PROCOPIO SR. FAMILY TRUST; GLENN T. PINDER, an individual and sole member of PINDER ENTERPRISES, LLP, <br><br> Plaintiffs, <br><br> vs. <br><br> COLLIERS INTERNATIONAL GROUP, INC., a Canadian corporation; MILLCREEK COMMERCIAL PROPERTIES, LLC, a Utah limited liability company; MILLROCK INVESTMENT FUND 1, LLC, a Utah limited liability company; KEVIN LONG, an individual; BRENT SMITH, an | CASE NO.: 2:24-cv-10876-CV-E <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS BRENT SMITH AND MILLROCK INVESTMENT FUND 1, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> <u>Hearing</u> <br> Date: July 18, 2025 <br> Time: 1:30 p.m. <br> Courtroom: 5D <br> Judge:   Hon. Cynthia Valenzuela |

individual; DOUGLAS SCHEEL, an
individual; TROY SCHEEL, an
individual; MOUNTAIN WEST
COMMERCIAL, LLC, a Utah limited
liability company; MEGAN DESTITO,
an individual; CAMS REALTY, LLC, a
Utah limited liability company; KGL
ADVISORS, LLC, a Utah limited liability
company; SOUTHERN CALIFORNIA
EXCHANGE SERVICES, LLC, a
California limited liability company, and
DOES 1-10, inclusive,

      Defendants.

PLAINTIFFS' OPPOSITION TO DEFENDANTS BRENT SMITH AND MILLROCK INVESTMENT FUND 1,
LLC'S MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION............................................................................8

II.   FACTUAL BACKGROUND ..........................................................9

III.  LEGAL ARGUMENT..................................................................12

A.    Standard on Motion to Dismiss................................................. 12

B.    The Obligations of Sellers of Securities ................................... 14

C.    Plaintiffs' Claim for 10b5 Satisfies PSLRA and FRCP 9(b)........................................ 15

  1.  Claims Under 10b-5 ............................................................15

  2.  Claims for Deceptive Practices under Rule 10b-5(a), (c)...................................20

  3.  Misrepresentations and Omissions in the Offering Memoranda........................21

  4.  Scienter ..............................................................................22

D.    Claims 3 Through 12 Are Well Pled .........................................25

  1.  Claims 3 and 4 for Financial Elder Abuse Are Well Plead................................25

  2.  Claims 5 and 6 for Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty Comply with Pleading Requirements........................................26

  3.  Claims 7 and 8 for Constructive Fraud are Well Pled.........................................28

  4.  Claims 9 and 10 for Professional Negligence and Negligent Misrepresentation is Well Pled.............................................................................28

  5. Claim 11 for Unfair Competition is Proper ..........................................................28

  6. Claim 12 for Control Person Liability is Proper....................................................29

E.    If the Court grants the Motion, Leave to Amend Should be Granted .....................29

IV.   CONCLUSION.............................................................................31

PLAINTIFFS' OPPOSITION TO DEFENDANTS BRENT SMITH AND MILLROCK INVESTMENT FUND 1, LLC'S MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Abdo v. Fitzsimmons*, No. 17-CV-00851-TSH,

 2021 WL 616324, (N.D. Cal. Feb. 17, 2021)...................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).............................................................12

*Avis Budget Grp., Inc. v. California State Teachers' Ret. Sys.*, 552 U.S. 1162 (2008).....15

*Bautista v. Valero Mktg. & Supply Co.,* No. 15-CV-05557-RS,

 2016 WL 3924117 (N.D. Cal. July 21, 2016).................................................28

*Bly-Magee v. State of Cal.*, 236 F.3d 1014 (9th Cir. 2001)................................13

*Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787 (9th Cir. 1963)...................30

*Canizaro v. Kohlmeyer & Co.*, 370 F.Supp. 282

 (E.D. La. 1974, aff'd, 512 F.2d 484 (5th Cir. 1975)........................................14

*Conley v. Gibson*, 355 U.S. 41 (1957).................................................................30

*EdgePoint Capital Holdings, LLC v. Apothecare Pharmacy, LLC*,

 6 F.4th 50 (1st Cir. 2021) ...............................................................................21

*Eminence Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048 (9th Cir. 2003)...............................30

*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................30

*Fontana v. Haskin*, 262 F.3d 871 (9th Cir. 2001)..............................................12

*Hanley v. Sec. & Exch. Comm'n*, 415 F.2d 589 (2d Cir. 1969)........................14

*Howey v. U.S.,* 481 F.2d 1187 (9th Cir. 1973)....................................................31

*Hsu v. Puma Biotechnology, Inc.*, 213 F.Supp.3d 1275 (C.D. Cal. 2016) .......................16

*Hullinger v. Anand*, No. CV1507185SJOPJWX,

 2016 WL 11750270 (C.D. Cal. July 8, 2016) ................................................13

*In re AOL Time Warner, Inc. Sec.and ERISA Lit.*,

 381 F.Supp.2d 192 (S.D.N.Y. May 5, 2004)..................................................22

*In re BISYS Sec. Litig.,* 397 F.Supp.2d 430 (S.D.N.Y. Oct. 28, 2005).............................22

*In re Countrywide Fin. Corp. Sec. Litig.*, 588 F.Supp.2d 1132 (C.D. Cal. 2008).............29

*In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005) ........................................16

*In re Initial Pub. Offering Sec. Litig.*, 241 F.Supp.2d 281 (S.D.N.Y. 2003)..............13, 23

*In re LDK Solar Sec. Litig.,* No. C0705182WHA,

   2008 WL 4369987 (N.D. Cal. Sept. 24, 2008)................................................29

*In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F.Supp.2d 452

   (S.D.N.Y. 2006)..................................................................................17

*In re New Century*, 588 F.Supp.2d 1206 (C.D. Cal. 2008) ................................17

*In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017)....................19

*In re Terayon Commc'ns Sys., Inc.*, No. C 00-01967 MHP,

   2002 WL 989480 (N.D. Cal. Mar. 29, 2002) ......................................23

*In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694 (9th Cir. 2012) ........................14

*Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,

   340 F.Supp.3d 285 (S.D.N.Y. 2018) ...............................................17

*Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)..........................21

*Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*,

   701 F.2d 1276 (9th Cir. 1983) .......................................................30

*Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014) ................................16

*Lorenzo v. Sec. & Exchnge. Commission*, 587 U.S. 71 (2019) ..................................21, 22

*Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242 (5th Cir. 1997)........................30

*Mann v. GTCR Golder Rauner, LLC*, 483 F.Supp.2d 864 (D. Ariz. 2007) ....................27

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011)..............................16

*May v. Google LLC*, No. 24-CV-01314-BLF,

   2024 WL 4681604 (N.D. Cal. Nov. 4, 2024).....................................17

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008)........................12

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008)...........16

*Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074 (9th Cir. 1990) ....................30

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ........................................13

*Novak v. Kasaks,* 216 F.3d 300 (2d Cir. 2000)................................................19

PLAINTIFFS' OPPOSITION TO DEFENDANTS BRENT SMITH AND MILLROCK INVESTMENT FUND 1, LLC'S MOTION TO DISMISS

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, No. CV-15-8574-PSG,

    2016 WL 6782768 (C.D. Cal. Aug. 9, 2016) ........................................................20

*Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708 (9th Cir. 2001).......................30

*Paulsen v. CNF Inc.*, 559 F.3d 1061 (9th Cir. 2009)...........................................................25

*Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413 (C.D. Cal. 2012) ..............................25, 28

*Rolf v. City of San Antonio*, 77 F.3d 823 (5th Cir.1996) ...................................................30

*S.E.C v. Criterion Wealth Management Services, Inc.*,

    599 F.Supp.3d 932 (C.D. Cal. 2022) ...............................................................27

*S.E.C. v. Ficeto*, 839 F.Supp.2d 1101 (C.D. Cal. 2011) ....................................................13

*SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180 (1963) ................................27

*SEC v. Murphy*, 50 F.4th 832 (9th Cir. 2022).....................................................................21

*SEC v. North American Research and Development Corp.*,

    424 F.2d 63 (2d Cir. 1970) ...............................................................14

*Sec. & Exch. Comm'n v. Earle*, 751 F.Supp.3d 1044 (S.D. Cal. 2024)............................21

*Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040 (9th Cir. 2006)..................................15

*Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008) ....................................15

*Siracusano v. Matrixx Initiatives*, Inc., 585 F.3d 1167 (9th Cir. 2009)...........................16

*Smallwood v. NCsoft Corp.*, 730 F.Supp.2d 1213 (D. Haw. 2010).................................25

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,

    690 F.Supp.2d 959, 970 (D. Ariz. 2010).............................................................29

*Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114 (9th Cir. 1994).......27

*United Ass'n Nat'l Pension Fund v. Carvana Co.*, No. CV-22-02126-PHX-MTL,

    2024 WL 5153343 (D. Ariz. Dec. 16, 2024)....................................................20

*United States v. Hougham*, 364 U.S. 310 (1960)...............................................................30

*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016) .................16

*United Steelworkers of Am., AFL–CIO v. Mesker Bros. Indus., Inc.*,

    457 F.2d 91 (8th Cir. 1972) ...............................................................30

PLAINTIFFS' OPPOSITION TO DEFENDANTS BRENT SMITH AND MILLROCK INVESTMENT FUND 1, LLC'S MOTION TO DISMISS

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)..........................................25

*William Morris Endeavor Ent., LLC v. Writers Guild of Am.*,

   478 F.Supp.3d 932 (C.D. Cal. 2020)..................................................................16

*Zucco Partners, LLC v. Digimarc, Corp.*, 552 F.3d 981 (9th Cir. 2009)..........................13

**STATE CASES**

*Lazar v. Bishop,* 107 Cal.App.5th 668 (2024)......................................................27

*Maron v. Swig*, 115 Cal.App. 2d 87, 91 (1952)....................................................22

*Tribeca Companies, LLC v. First Am. Title Ins. Co.*, 239 Cal.App.4th 1088 (2015).......26

**FEDERAL STATUTES**

15 U.S.C. § 78u–4................................................................................16

Fed. R. Civ. Proc. 8........................................................................13, 29

Fed. R. Civ. Proc. 9..............................................................................13

**STATE STATUTES**

Cal. Civ. Code § 2332............................................................................23

Cal. Civ. Code § 2338......................................................................12, 22

Cal. Wel. & Inst. Code §15160.30................................................................25

**RULES**

SEC Rules 10b-5..............................................................................15, 20

**REGULATIONS**

17 CFR § 240.10b–5..............................................................................15

PLAINTIFFS' OPPOSITION TO DEFENDANTS BRENT SMITH AND MILLROCK INVESTMENT FUND 1, LLC'S MOTION TO DISMISS

Plaintiffs hereby submit their Opposition to Defendants Millrock Investment Fund 1, LLC and Brent Smith's (collectively "Millrock Defendants") Motion to Dismiss First Amended Complaint.

## I.    INTRODUCTION

In this case, Plaintiffs Anne L. Thart, individually and as trustee of the Anne L. Thart Living Trust dated July 1, 1998,  Russell Chadwick McAllister and Amy McAllister, individually and as trustees of the McAllister Family Trust, Joseph A. Procopio, individually and as trustee of the Jospeh A. Procopio Sr. Family Trust and Glenn Pinder, individually and as sole member of Pinder Enterprises, LLP (collectively "Plaintiffs") seek to redress numerous harms caused by Defendants, including resulting from securities fraud, breach of fiduciary duty, negligence and negligent misrepresentation.  In this case, each of the named Defendants collectively worked on a scheme to deprive Plaintiffs of their hard earned retirement funds by syndicating and offering securities interests in real property to retail investors by way of misleading offering documents, practices violating industry norms and without proper licensing to avoid the oversight by securities regulatory authorities.

In their Motion to Dismiss, the Millrock Defendants claim that Plaintiffs failed to comply with all applicable pleading standards - notice pleading, heightened pleading and the Private Securities Regulatory Reform Act – by ignoring and intentionally re-interpreting Plaintiffs' First Amended Complaint and the allegations therein.  The Motion is a blatant attempt to avoid responsibility and liability for inflicting millions of dollars in damage to Plaintiffs.

While certain claims, including fraud, require specificity and/or heightened pleading, the Millrock Defendants encourage this Court to adopt pleading requirements that are impossible to meet and inconsistent with the law.  In doing so, they seek to prevent Plaintiffs from pleading any of their claims without regards to the factual allegations asserted.

As set forth in the First Amended Complaint, the Millrock Defendants are

undoubtedly at the center of the wrongful acts alleged – they purchased the Crocket property, syndicated it for sale to investors, hired agents without the proper licensing to sell tenant in common interests to investors, created and approved Offering Memorandum without proper and fulsome disclosures, controlled a marketing entity to create the illusion of profitability and failed to provide key information to Plaintiffs before they purchased their tenant in common interests. In doing so, the Millrock Defendants initiated a scheme where they received massive profits and continually used investor proceeds to repay new investors under the guise that profitable tenants had paid rent, taxes, costs and insurance to convince Plaintiffs and other investors that they could collect passive income without risk of loss. They did so for the sole purpose of continuing their scheme and collecting millions of dollars of profits at the expense of elderly, retired investors.

A holistic review of the First Amended Complaint, and the allegations therein, requires that this Court deny the Motion to Dismiss in its entirety.

## II. <u>FACTUAL BACKGROUND</u>

Defendants collectively engaged in a conspiracy to defraud Plaintiffs of their hard earned retirement funds. (Dkt. 91, ¶90).

The Millrock Defendants participated in the scheme to defraud and deceive Plaintiffs by making misrepresentations and omissions, selling tenant in common investments in the Crocket Property to Plaintiffs and reaping the benefits of the fraud by collecting millions of dollars in profits.

In an effort to further their scheme to sell securities to elderly investors, Millrock entered into agreements with Defendants Millcreek Commercial Properties, LLC and Colliers International to act as their agents. In particular, as outlined in the Memorandum of Understanding (attached to the First Amended Complaint), Millrock agreed:

- "We (the Smith family and the Long family) have created an LLC (Investment Fund) to invest in quality long term debt free STNL properties (Millrock Investment Fund 1, LLC)."

- "The fund acquires or develops these assets with the intent to market them

for resale by syndicating them as real estate investments to middle class investors for their IRAs and 401Ks, as well as offering them to traditional small 1031 exchange clients and as boot coverage for large 1031 clients."

- "These high-quality assets will be sold as Tenant In Common real estate with no debt."

- "The fund retains The Kevin Long Team (via Colliers) as their exclusive agent for all acquisitions. The Fund documents guarantee the Kevin Long Team a minimum 2% commission on each acquisition."

- "The Fund lists the TIC resale product with The Kevin Long Team (via Colliers."

- "The Fund has a marketing company (Millcreek Commercial Properties) to brand the TIC properties and pays the unique marketing costs associated with this disruptive approach of marketing directly to middle class clients as TICs."

- "Kevin Long in cooperation with J. Adam Long own the LLC that is the managing partner of the Fund - MillRock Investment Fund Management."

- "The Fund is also Kevin's client in his capacity as an agent here at Colliers."

- "The listing agreement has the Fund pay Colliers in favor of The Kevin Long Team a 4% commission on all sales. The Listing Agent can offer 3% to cooperating brokers and retain only 1% on certain transactions as they see fit. …"

- "The Fund has a separate agreement with Millcreek Commercial Properties (MCP) where MCP is compensated for marketing and client services based on the sales volume of the fund. …"

- "In cooperation with Colliers, MCP and the Kevin Long team agrees to create, implement and manage a quality agent training and mentoring program. It is our goal to create a sales team and ongoing training program

10

that supports Collier's role as the market leader in the Intermountain West." (Dkt. 91-1)

In an effort to sell the TIC investments to retail investors, Millrock, its principals and agents made numerous false and misleading statements in the Offering Memorandum including:

- "Pulse Healthcare System is made up of nine clinic locations across the state of Texas. The twelve healthcare providers at Pulse put one-on-one relationship with their patients at the core of what they do. … Pulse prioritizes state-of-the-art resources. The clinics are equipped with the best technology and treatment options to ensure that patients are feeling better without delay."
- "Pulse Healthcare includes a well-performing vascular surgery portfolio."
- "4 additional locations Ideally situated to meet the demand for vascular surgery."
- "15-Year Sale Leaseback on Triple Net (NNN) Leases."
- "Full Corporate Guarantee from Pulse Healthcare."
- "Pandemic, Recession and Internet Resistant Tenant with 8 clinics throughout the Greater Houston area."
- "Landlord Responsibilities None"
- "Insurance / Taxes/CAM/Utilities Responsibility of Tenant"

(*Id*., ¶ 78).

The Millrock Defendants also omitted material information that would be important to any investor including:

- The tenant was not an established business with positive operating history, but a startup that was funded by Millrock to purchase equipment and machinery necessary to operate the surgery center (*id*., ¶76);
- The Property was not professionally managed but had hired a lease administrator (*id*., ¶75);
- The tenant did not operate a surgery center from the Crocket Property (*id*., ¶

11

85);

- The tenant was insolvent, unprofitable and financially unsustainable (*id*., ¶¶ 84d, 86);

- The price of the property was not commensurate with the value (*id*., ¶¶ 84(d), 90);

- They did not conduct any due diligence on the property (*id*., ¶84c).

The Millrock Defendants' agents, Long, Smith, Millcreek and Colliers, also made additional material misrepresentations and omissions for which Millrock is responsible as a matter of law. *See* Cal. Civ. Code § 2338.

## III.    <u>LEGAL ARGUMENT</u>

### A.    **Standard on Motion to Dismiss**

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  The Court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007) (emphasis added). The Court will also "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr*., 521 F.3d 1097, 1104 (9th Cir. 2008).

Notably, "Pleadings need suffice only to put the opposing party on notice of the claim. All pleadings shall be construed as to do substantial justice, and [n]o technical forms of pleading ... are required. Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001) (internal citations and quotations

omitted). General pleading requirements are governed by Fed. R. Civ. Proc. 8(a). "Rule 8(a) does not require plaintiffs to plead the legal theory, facts or elements underlying their claim." *In re Initial Pub. Offering Sec. Litig.*, 241 F.Supp.2d 281, 323 (S.D.N.Y. 2003). Moreover, "[a] complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts." *Id.*

While Fed. R. Civ. Proc. 9(b) requires heightened pleading of fraud claims, it does not require plaintiff to "provide every factual detail supporting its fraud claim." *S.E.C. v. Ficeto*, 839 F.Supp.2d 1101, 1105 (C.D. Cal. 2011), abrogated by *Stoyas v. Toshiba Corp., on other grounds*, 896 F.3d 933 (9th Cir. 2018). It is sufficient to allege each defendant's role, the specific fraudulent acts, and how the acts constitute fraud. *See id.* Rule 9(b) permits "intent, knowledge, and other condition of mind of a person [to] be averred generally." *Hullinger v. Anand*, No. CV1507185SJOPJWX, 2016 WL 11750270, at *7 (C.D. Cal. July 8, 2016), on reconsideration, No. CV1507185SJOFFMX, 2016 WL 4409196 (C.D. Cal. Aug. 11, 2016). "[T]o comply with Rule 9(b), allegations of fraud [or substantial assistance] must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.' " *Bly-Magee v. State of Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). "[I]n applying rule 9(b) [courts] must not lose sight of the fact that it must be reconciled with rule 8 which requires a short and concise statement of claims." *In re Initial Pub. Offering Sec. Litig.*, 241 F.Supp.2d at 326. "Fraud may be pleaded without long or highly detailed particularity." *Id.*

In the context of the PSLRA, examination of the complaint involves the "dual inquiry" of, "whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter," and a "'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Zucco Partners, LLC v. Digimarc, Corp.*, 552 F.3d 981, 992 (9th Cir. 2009). The Ninth Circuit has further clarified the two-step

13

analysis is appropriate as long as it "does not unduly focus on the weakness of individual allegations to the exclusion of the whole picture"; alternatively, it may conduct only a holistic review, mindful that it does not "simply ignore the individual allegations and the inferences drawn from them." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 703 (9th Cir. 2012).

### B.    The Obligations of Sellers of Securities

As a threshold matter, Plaintiffs allege that the Millrock Defendants sold securities to the McAllisters and received commissions in connection with each transaction. (*Id.*, ¶ 20, 30-31, 53). Therefore, for the purposes of the pleading stage, the Court must accept as true that the Millrock Defendants were sellers of securities and bound by the law and obligations applying to sellers of securities. *Tellabs, Inc., supra*, 551 U.S. at 322.

The securities laws provide stringent responsibilities for truthful disclosure of material facts by salespeople. *Hanley v. Securities and Exchange Commission* outline these duties succinctly. In *Hanley*, the Second Circuit explained: "[S]alesmen are 'under a duty to investigate, and their violation of that duty brings them within the term 'willful' in the Exchange Act.' Thus, a salesman cannot deliberately ignore that which he has a duty to know and recklessly state facts about matters of which he is ignorant. He must analyze sales literature and must not blindly accept recommendations made therein. The fact that his customers may be sophisticated and knowledgeable does not warrant a less stringent standard." *Hanley v. Sec. & Exch. Comm'n*, 415 F.2d 589, 595–96 (2d Cir. 1969) (emphasis added). In its opinion, the Court concluded, "In summary, the standards by which the actions of each petitioner must be judged are strict. Where the salesman lacks essential information about a security, he should disclose this as well as the risks which arise from his lack of information." *Id.* (emphasis added); *see also SEC v. North American Research and Development Corp.*, 424 F.2d 63,84 (2d Cir. 1970); *Canizaro v. Kohlmeyer & Co.*, 370 F.Supp. 282, 289 (E.D. La. 1974, aff'd, 512 F.2d 484 (5th Cir. 1975) ("a broker who recommends a security or who volunteers an "investment opinion" or makes a prediction in order to effect a sale or purchase must have a reasonable basis

for what he tells his customer.")

The Millrock Defendants encouraged Plaintiffs to rely on them preparing and approving an Offering Memorandum riddled with misrepresentations, half truths and omissions, by holding themselves out as experts and claiming that the tenant in common investment had no risk and could be sold at any time. (Dkt. 91, ¶¶ 17-19,78-79). If Plaintiffs had known about the misrepresentations, half truths and omissions in the Offering Memorandum or that the Millrock Defendants had not done any investigation and they had the potential to lose their investment entirely, it would have undermined the Millrock Defendants' representations that Plaintiffs relied upon in purchasing the investments.

## C.    Plaintiffs' Claim for 10b5 Satisfies PSLRA and FRCP 9(b)

Plaintiffs allege claims for securities fraud under SEC Rules 10b-5(a), (b) and (c). "To implement § 10(b), the SEC promulgated Rule 10b–5, 17 CFR § 240.10b–5. Rule 10b–5 is composed of three parts that describe the type of conduct prohibited by § 10(b). The second part proscribes the making of "any untrue statement of a material fact" or the omission of any material fact that is necessary in order to make the statements made not misleading. Rule 10b–5(b), 17 CFR § 240.10b–5(b). The first and third parts make it unlawful for any person "to employ any device, scheme, or artifice to defraud" or "to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1046 (9th Cir. 2006), cert. granted, judgment vacated sub nom. *Avis Budget Grp., Inc. v. California State Teachers' Ret. Sys.*, 552 U.S. 1162 (2008), and vacated sub nom. *Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008).

### 1.    Claims Under 10b-5

To show securities fraud under Section 10(b) and Rule 10b–5 of the Securities Exchange Act, plaintiffs must allege facts sufficient to establish (1) a material misrepresentation or omission; (2) made with scienter, i.e., a wrongful state of mind; (3) a connection between the misrepresentation and the purchase or sale of a security; (4)

15

reliance upon the misrepresentation; (5) economic loss; and (6) loss causation. *Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014), amended (Sept. 11, 2014).

With regards to alleged omissions, particularity standards are relaxed and only require content of omission, where it could have been or should have been revealed and representative examples. *See William Morris Endeavor Ent., LLC v. Writers Guild of Am.*, 478 F.Supp.3d 932, 943–44 (C.D. Cal. 2020). Plaintiffs do not have an obligation to identify representative examples of false statements to support every allegation. *United States v. United Healthcare Ins. Co*., 848 F.3d 1161, 1180 (9th Cir. 2016) ("a complaint need not allege "a precise time frame," "describe in detail a single specific transaction" or identify the "precise method" used to carry out the fraud. The complaint also need not "identify representative examples of false claims to support every allegation.") (internal citations omitted).

"[F]alsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, and the two requirements may be combined into a unitary inquiry under the PSLRA." *In re Daou Sys., Inc*., 411 F.3d 1006, 1015 (9th Cir. 2005) (quotation marks omitted); *Hsu v. Puma Biotechnology, Inc.*, 213 F.Supp.3d 1275, 1286 (C.D. Cal. 2016). "[F]ailure to discover relevant information about the securities [salespeople] were selling, amounted to recklessness sufficient to establish the requisite scienter." *Everest Sec., Inc. v. S.E.C.,* 116 F.3d 1235, 1239 (8th Cir. 1997). To adequately plead scienter under the PSLRA, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(a). Scienter requires a state of mind as one that intends to deceive, manipulate, or defraud or made with intentional or deliberate recklessness. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008); *Siracusano v. Matrixx Initiatives*, Inc., 585 F.3d 1167, 1180 (9th Cir. 2009), aff'd sub nom. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) (quotations and citations omitted). "The inferences that the defendant acted with scienter need not be ... of the 'smoking-gun' genre." *Tellabs, Inc. v. Makor Issues &Rights, Ltd.,* 551 U.S. 308, 324

(2007).

Although Defendants' Motion claims that the First Amended Complaint constitutes a "group" or "shotgun" pleading, a review of First Amended Complaint demonstrates otherwise. *See May v. Google LLC*, No. 24-CV-01314-BLF, 2024 WL 4681604, at *7 (N.D. Cal. Nov. 4, 2024) ("But so-called "group pleading" is not fatal if the complaint gives defendants fair notice of the claims against them."); *In re New Century*, 588 F.Supp.2d 1206, 1224 (C.D. Cal. 2008) (holding that as long as the Complaint alleges violations of statements for defendants that do not rest on group pleading, there is sufficient specificity to support false statements and omissions under PSLRA)*; Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 340 F.Supp.3d 285, 317 (S.D.N.Y. 2018) ("Group pleading 'is insufficient to withstand review on a motion to dismiss ... [where there are] no factual allegations in the complaint to connect each, or any, of the group defendants, directly to the conspiracy[.]' Because the Amended Complaint alleges each Defendant's participation separately, it is not impermissible group pleading to refer to their collective actions in furtherance of the conspiracy using a more general phrase such as 'the Prime Broker Defendants.'"); *see also In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F.Supp.2d 452, 479 (S.D.N.Y. 2006) ("Defendants' argument that group pleading is no longer permissible under the PSLRA is rejected.").

The First Amended Complaint specifically alleges that the Millrock Defendants made the following misrepresentations in the Offering Memorandum:

- "Pulse Healthcare System is made up of nine clinic locations across the state of Texas. The twelve healthcare providers at Pulse put one-on-one relationship with their patients at the core of what they do. … Pulse prioritizes state-of-the-art resources. The clinics are equipped with the best technology and treatment options to ensure that patients are feeling better without delay."

- Pulse Healthcare includes a well-performing vascular surgery portfolio."

17

- "4 additional locations Ideally situated to meet the demand for vascular surgery."
- "15-Year Sale Leaseback on Triple Net (NNN) Leases."
- Full Corporate Guarantee from Pulse Healthcare."
- "Pandemic, Recession and Internet Resistant Tenant with 8 clinics throughout the Greater Houston area."
- "Landlord Responsibilities None"
- "Insurance / Taxes/CAM/Utilities Responsibility of Tenant"

(Dkt. 91,  ¶¶ 78-79).

They also made the following omissions of material fact, which were necessary to be disclosed to make the Offering Memorandum not misleading:

- "An investment in the Millcreek TIC Properties, including the Property, was not a safe, stable and reliable investment that would generate dependable income, but was risky and unsuitable for any Plaintiff, particularly in light of the tenants' financial condition."
- "The tenants of the properties were insolvent, unprofitable, financially unsustainable."
- "Defendants did not conduct any actual due diligence on proposed tenants and did not have any reliable financial information showing that tenants were successful or solvent."
- "Plaintiffs were not purchasing real estate with value commensurate with their investment. The actual cost of the buildings was substantially less than the price that Plaintiffs were required to pay for their TIC interests, and the fair market value of the buildings as real estate would be only a fraction of the amount of the Plaintiffs' collective TIC Investment."
- "The professionals that introduced Millcreek to Plaintiffs each received substantial commissions." (*Id.*, ¶ 84).

The Millrock Defendants also failed to disclose that had provided the tenant $2,000,000

18

in startup costs for necessary expenses to run the surgery center. (*Id.*, ¶ 98). Each of these misrepresentations were made in the sales process before Plaintiffs purchased their TIC interests.

The First Amended Complaint also alleges that the Millrock Defendants, along with the other defendants, omitted and failed to disclose the following material facts as a part of the fraudulent scheme and deceptive practices that defendants collectively employed:

- The tenant was not an established business with positive operating history, but a startup that was funded by Millrock to purchase equipment and machinery necessary to operate the surgery center (*id.*, ¶76);

- The Property was not professionally managed but had hired a lease administrator (*id.*, ¶75);

- The tenant did not operate a surgery center from the Crocket Property (*id.*, ¶ 85);

- The tenant was insolvent, unprofitable and financially unsustainable (*id.*, ¶¶ 84d, 86);

- The price of the property was not commensurate with the value (*id.*, ¶¶ 84(d), 90);

- They did not conduct any due diligence on the property (*id.*, ¶84c).

To be sure, the law is clear that the failure to conduct due diligence into the security before selling and/or recommending it to investors is sufficient to allege recklessness as a matter of law. *See Everest Sec., Inc. v. S.E.C., supra*, 116 F.3d at 1239; *Novak v. Kasaks,* 216 F.3d 300, 311 (2d Cir. 2000) (strong inference of recklessness "may arise where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud [ ] (2) engaged in deliberately illegal behavior [ ]; (3) knew facts or had access to information suggesting that their public statements were not accurate[ ]; or (4) failed to check information they had a duty to monitor, [ ]."); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017)

19

(Particular allegations that a defendant was aware of or "had actual access to the disputed information raise a strong inference of scienter.")

### 2. Claims for Deceptive Practices under Rule 10b-5(a), (c)

"Subsection (a) of [10b5] makes it unlawful to employ any device, scheme, or artifice to defraud and subsection (c) makes it unlawful to engage in any act, practice, or course of business that operates...as a fraud or deceit. Under subsection (a), [a] device is simply that which is devised, or formed by design; a scheme is a project, plan, or program of something to be done; and an artifice is an artful stratagem or trick. [A] non-speaking actor who engages in a scheme to defraud has used or employed a deceptive device within the meaning of § 10(b). The words act and practice in subsection (c) are similarly expansive. An act is a doing or thing done, and a practice is an action or deed. Together, [t]hese provisions capture a wide range of conduct. While the second paragraph of Rule 10b-5 specifies the making of an untrue statement...[t]he first and third subparagraphs are not so restricted." *Abdo v. Fitzsimmons*, No. 17-CV-00851-TSH, 2021 WL 616324, at *10 (N.D. Cal. Feb. 17, 2021) (internal citations and quotations omitted).

Elements of scheme liability pursuant to 10b5(a), (c) include: "(1) use or employment of any manipulative or deceptive device or contrivance; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance upon the deceptive or manipulative act by investors; (5) economic loss; and (6) loss causation." *United Ass'n Nat'l Pension Fund v. Carvana Co.*, No. CV-22-02126-PHX-MTL, 2024 WL 5153343, at *19 (D. Ariz. Dec. 16, 2024), reconsideration denied, No. CV-22-02126-PHX-MTL, 2025 WL 371717 (D. Ariz. Feb. 3, 2025). "[G]iven that the exact mechanism of the scheme is likely to be unknown to the plaintiffs, allegations of the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants are sufficient for alleging participation." *Id.* (internal citations and quotations omitted). Notably, **the PSLRA does not apply to 10b5(a), (c) claims**. *See Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, No. CV-15-8574-PSG, 2016 WL 6782768, at *14 (C.D. Cal. Aug. 9, 2016).

The Millrock Defendants participated in the deceptive scheme by purchasing and

syndicating the Crocket Property to retail investors, preparing and approving the Offering Memorandum, hiring agents Millcreek and Colliers to sell interests in the Crocket Properties, which were securities, without proper licensure, recommending the TIC investments to Plaintiffs, assuring them that the investment had no risk and stating that the investment could be sold at any time without any reasonable basis for believing these statements to be true as they had conducted no due diligence or investigation into the investment. Notably, the purpose of licensing requirements for the sale of securities is to protect investors like Plaintiffs.  As Courts routinely acknowledge, transaction-based compensation suggests that a party must register as a broker because it "can encourage high pressure sales tactics [in conflict] with the interests of his or her client." *Sec. & Exch. Comm'n v. Earle*, 751 F.Supp.3d 1044, 1055–56 (S.D. Cal. 2024) (citing *SEC v. Murphy*, 50 F.4th 832, 846 (9th Cir. 2022) (internal quotation marks omitted); *EdgePoint Capital Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 57 n.5 (1st Cir. 2021) ("Transaction-based compensation is a hallmark indication that a party has acted as a broker and must register because it represents a potential incentive for abusive sales practices that registration is intended to regulate and prevent." (internal quotation marks removed)).  However, in this case, the Millrock Defendants intentionally subverted the licensing regime and oversight of regulatory authorities meant to protect investors like Plaintiffs.

### 3. Misrepresentations and Omissions in the Offering Memoranda

"For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). "[D]issemination of false or misleading statements with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b–5, as well as the relevant statutory provisions. …even if the disseminator did not "make" the statements." *Lorenzo v. Sec. & Exchnge. Commission*, 587 U.S. 71, 78 (2019). "Those who disseminate false statements with intent to defraud are primarily liable under Rules 10b–5(a) and (c), § 10(b), and §

17(a)(1), even if they are secondarily liable under Rule 10b–5(b)." *Id.*, at 83.

The group pleading doctrine allows the court to presume that statements in certain group-published documents (i.e. registration statements, annual reports, prospectuses) are the collective work of certain individuals. *See In re AOL Time Warner, Inc. Sec.and ERISA Lit.*, 381 F.Supp.2d 192, 220 (S.D.N.Y. May 5, 2004). A plaintiff may invoke the group pleading doctrine against a defendant if the plaintiff has alleged facts indicating that "the defendant was a corporate insider or affiliate with direct involvement in the daily affairs of the company." *In re BISYS Sec. Litig.*, 397 F.Supp.2d 430, 440 (S.D.N.Y. Oct. 28, 2005) (citation omitted).

Millrock as the owner and syndicator of the tenant in common investments sold to Plaintiffs is the maker of statements in the Offering Memoranda and responsible for its contents. By distributing the Offering Memoranda to Plaintiffs and enabling Millcreek to act as its agents to sell the investments through its website, Millrock is also responsible for the misrepresentations, omissions and deceptive statements on the Millcreek website. *See* Cal. Civ. Code § 2338; *Maron v. Swig*, 115 Cal.App. 2d 87, 91 (1952) ("under Civil Code section 2338 a principal is responsible to third parties for wrongful acts committed by his agent in and as a part of the transaction of the business of the agency and for the agent's willful omission to fulfill the obligations of the principal."). Likewise, Brent Smith, as an owner of both Millcreek and Millrock who was involved in the day-to-day affairs of both companies that approved, reviewed and revised the Offering Memoranda and website, is also responsible for the deceptive conduct and statements therein. *See In re AOL Time Warner, Inc. Sec.and ERISA Lit.*, 381 F.Supp.2d at 220.

### 4. Scienter

The Millrock Defendants also claim that Plaintiffs failed to plead scienter. However, this contention is based only upon an intentionally misreading of the First Amended Complaint and ignorance of the applicable law. Scienter under PSLRA may be established by pleading "motive and opportunity to commit fraud" coupled with "strong circumstantial evidence of conscious misbehavior or recklessness." *See In re Initial Pub.*

22

*Offering Sec. Litig.,* 241 F.Supp.2d at 330; s*ee also In re Terayon Commc'ns Sys., Inc.*, No. C 00-01967 MHP, 2002 WL 989480, at *10 (N.D. Cal. Mar. 29, 2002) ("facts showing motive and opportunity to commit fraud can provide confirming reasonable inferences that help establish a strong inference along with other allegations.")

Moreover, California law imputes the knowledge of Millrock's agents, including Long, Smith, Millcreek[1] and Colliers, to Millrock. *See* Cal. Civ. Code § 2332 ("As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other.")

The First Amended Complaint specifically alleges the relationship between Smith and Millrock (Dkt. 91, ¶16) - Smith was an owner of Millrock and Millcreek and his family was Millrock's largest investor. It also alleges that the Millrock Defendants each had

> "a motive to deceive Plaintiffs because they were paying investor distributions on all their properties from investor proceeds. Accordingly, they needed new investor funds (from Plaintiffs and others) to continue paying distributions and keeping investors from their tenant in common properties from learning that the investments were worth much less than they were sold for and close to insolvent. The only way to keep the scheme going was to use new investor funds to pay distributions to older investors or else the entire house of cards would collapse and all investors would learn of their malfeasance." (Dkt. 91, ¶93).

After investors discovered Defendants' fraud, there was a cascade effect resulting in tenants of twelve properties defaulting on the leases and numerous bankruptcies. (*Id.*, ¶ 102). There are also numerous allegations that the Millrock Defendants knew that statements they made to Plaintiffs were false and/or misleading at the time they made them. For example, paragraph 41 alleges that Smith and Millrock (among others)

---

[1] On December 26, 2024, Long admitted that "Millcreek was the marketing arm of an investment fund and when the fund decided to stop developing and marketing real estate properties due to various market evolutions, the viability of Millcreek's business was decimated." (Dkt. 91, ¶26).

PLAINTIFFS' OPPOSITION TO DEFENDANTS BRENT SMITH AND MILLROCK INVESTMENT FUND 1, LLC'S MOTION TO DISMISS

masterminded marketing of the Property to investors, including Plaintiff and that
Millrock agents sent emails stating that the property was "perfect" for "investors looking
for a safe, secure and stable investment."  In the same emails, Millrock's agents claimed:

- "Medical office buildings usually have lower vacancy rates than other types
  of commercial properties.

- Medical properties generally produce a steady case flow for investors.

- Healthcare is a 'recession resilient' product."  (Dkt. 91, ¶41).

Millrock's agents also emailed Plaintiffs stating that its properties "guarantee a
consistent stream of passive income" and are "fully managed." (*Id.*, ¶42). The Millrock
Defendants also claimed in the Offering Memorandum that the investment was
"Pandemic, Recession and Internet Resistant Tenant…" and that "Landlord
Responsibilities None" echoing the statements in the emails to investors.  (*Id.*, ¶78).
These statements were reviewed and approved by Smith before they were finalized. (*Id.*,
¶ 79). At that time that these representations were made, the Millrock Defendants knew
that the investment was not "safe, secure and stable" or "pandemic, recession and internet
resistant" because other tenants in other medical properties had already defaulted on their
leases resulting in "lost income when tenants refused to pay monthly leases, discovered
that the value of their investments were very low, the properties could not be released at
the same rates as the previous tenants, the properties could not be sold at the price per
square foot sold to investors, investors were required to pay taxes, maintenance fees and
insurance out of their own pockets and were required to be involved in day to day
management of the properties." (*Id.*, ¶74). Further, Millrock had provided the tenant,
Pulse Physician Organization, $2,000,000 for startup costs and equipment to run the
surgery center when it purchased the Property, but failed to disclose this essential fact to
Plaintiffs before they invested.  (*Id.*, ¶¶76, 97, 98).

Likewise, the Millrock Defendants knew that the Property was not fully managed
with no landlord responsibilities as represented to Plaintiffs because CAMS Realty and
Mary Street considered themselves the "lease administer" not property manager.  This

was first communicated to Plaintiffs on November 15, 2023 when Long claimed "Mary's role is to administer the lease – not manage the Property." (*Id.*, ¶96).

### D.    Claims 3 Through 12 Are Well Pled

The Millrock Defendants make the blanket claim that all the claims are based in fraud and must comply with heightened pleading standards under Rule 9(b). The Millrock Defendants are wrong.  Indeed, the very case they cite to support their argument, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) held that "where fraud is not an essential element of a claim, only allegations ("averments") of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *see also Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071-1072 (9th Cir. 2009) (acknowledging notice pleading standard for breach of fiduciary duty and professional negligence claims); *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 416-418 (C.D. Cal. 2012) ("Rule 9(b) does not apply to negligent misrepresentation claims . . . applying heightened pleading standard to negligence is contrary to the express language and policy of Rule(9) . . . "); *Smallwood v. NCsoft Corp.*, 730 F.Supp.2d 1213, 1231 (D. Haw. 2010) ("A negligent misrepresentation claim does not require intent, and accordingly is not subject to Rule 9(b).").

### 1.  Claims 3 and 4 for Financial Elder Abuse Are Well Plead

The Millrock Defendants contend that the Rule 9(b) applies to claims of financial elder abuse.  A review of the Financial Elder Abuse statute demonstrates that fraud is not an essential element of financial elder abuse.  Cal. Wel. & Inst. Code §15160.30(b).

Moreover, the First Amended Complaint contends that the Millrock Defendants engaged in financial elder abuse as follows: "Defendants put their own interest ahead of Plaintiffs' financial well-being; Defendants engaged in undisclosed conflicts of interest and did not minimize these conflicts; Defendants pursued an unduly high-risk and high-cost investment strategy; Defendants did not recommend less risky, less costly alternative

strategies even though that was the strategy Plaintiffs wanted and believed they were receiving from Defendants. Plaintiffs relied on Defendants' representations about the products and services. Defendants omitted key facts regarding the products and services and misstated, mispresented, concealed and/or omitted the risks in the recommended investment products and services." (Dkt. 91, ¶ 132). It also contends that the Millrock Defendants' conduct was reckless. *See* Dkt. 91, ¶134 (Defendants "should have known that their malfeasance was harmful to elderly California residents...") Since the allegations against the Millrock Defendants are not solely claimed to be fraudulent or intentionally false, only Rule 8(a) applies. Clearly, claims 3 and 4 comply with the minimal notice pleading requirements, which does not require detailed factual allegations.

## 2. Claims 5 and 6 for Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty Comply with Pleading Requirements

Similarly, the Millrock Defendants claim that the breach of fiduciary duty claim is grounded in fraud. However, the law is clear that breach of fiduciary duty may be based on negligent conduct such that fraud is not a necessary element. *See Tribeca Companies, LLC v. First Am. Title Ins. Co.*, 239 Cal.App.4th 1088, 1114 (2015) ("The breach of fiduciary duty can be based upon either negligence or fraud, depending on the circumstances.")

The First Amended Complaint clearly contends that, as an alternative to fraud, Smith (and other Defendants) breached their fiduciary duty to Plaintiffs and Millrock aided and abetted the breach of fiduciary duty owed to Plaintiffs. In particular, the First Amended Complaint alleges that Smith

- "acted in capacity of licensed real estate brokers or agents or otherwise performed duties on behalf of Plaintiffs consistent with acting in that capacity..." (Dkt. 91, ¶ 155(a))
- "acted in the capacity of licensed securities agents or performed duties on behalf of the Plaintiffs consistent with acting in that capacity and for which a

26

securities license is required and for which the law imposes fiduciary duties." *Id*., ¶155(b).

- "acted as agents of the Plaintiffs in matters concerning the investment in TIC Properties." *Id.*, ¶155(c).

Each of these relationships imposes a fiduciary duty on Defendant Smith. *See SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191, 194, 201 (1963) (United States Supreme Court recognizes investment advisers as fiduciaries); *Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114, 1122 (9th Cir. 1994) ("An investment advisor is always a fiduciary."); *S.E.C v. Criterion Wealth Management Services, Inc.*, 599 F.Supp.3d 932, 951 (C.D. Cal. 2022); *Lazar v. Bishop,* 107 Cal. App. 5th 668, 680 (2024), *reh'g denied* (Jan. 8, 2025)  ("It is well established that a real estate broker owes a fiduciary duty to her client, which 'requires the highest duty of good faith and undivided service and loyalty.'")

The First Amended Complaint also alleges that Smith  "breached the duty to disclose material information regarding the investments, including the risks, the creditworthiness and lack of operating history of the tenants, the failure to conduct adequate due diligence on the tenants, conflicts of interests, fees charged reducing the funds actually invested" and "by failing to disclose notable and significant facts that would alter any reasonable persons evaluation of the TIC investments."  The Millrock Defendants argument that there is no fiduciary relationship because the transaction was "arms length"(Dkt. 98, p 17) is nothing more than a competing factual contention which the Court may not consider at this stage in the proceedings.

*Mann v. GTCR Golder Rauner, LLC*, 483 F.Supp.2d 864, 878 (D. Ariz. 2007) cited by the Millrock Defendants is inapposite. In *Mann*, the Court dismissed the aiding and abetting breach of fiduciary duty claim because the underlying breach of fiduciary duty claim as to all defendants had previously been dismissed. Here, Smith and Millrock have not and cannot assert that the breach of fiduciary duty cannot survive against any defendant, thus there is no basis for the argument that aiding and abetting breach of

fiduciary duty cannot survive as a matter of law.

### 3.  Claims 7 and 8 for Constructive Fraud are Well Pled

As discussed above, Plaintiffs properly pled their fraud claims and identified the circumstances of the fraud such that the Millrock Defendants can fully respond to the First Amended Complaint. In doing so, Plaintiffs complied with Rule 9(b). Thus, the Motion to Dismiss must be denied as to claims 7 and 8 for constructive fraud.

### 4.  Claims 9 and 10 for Professional Negligence and Negligent Misrepresentation is Well Pled

Neither claims for professional negligence nor negligent misrepresentation are grounded in fraud.  These claims are not based on intentional conduct but rather negligent conduct or representations the Millrock Defendants "may have honestly believed were true." (Dkt. 91, par. 198, 203).  *See also Petersen,* 281 F.R.D. at 416-418 ("Rule 9(b) does not apply to negligent misrepresentation claims . . . applying heightened pleading standard to negligence is contrary to the express language and policy of Rule(9) . . . "); *Bautista v. Valero Mktg. & Supply Co.,* No. 15-CV-05557-RS, 2016 WL 3924117, at *3 (N.D. Cal. July 21, 2016) (averments that Defendant omitted material information from advertisements do not sound in fraud).  These claims are not subject to heightened pleadings standards.  The allegations are sufficient as a matter of law to state claims against the Millrock Defendants for professional negligence and negligent misrepresentation.

### 5.  Claim 11 for Unfair Competition is Proper

The Millrock Defendants also argue that the claim for unfair competition is improper. As set forth above, Plaintiffs allege a number of facts setting forth unfair and unlawful practices by the Millrock Defendants. In addition to numerous misrepresentations and omissions in the Offering Memorandum discussed above, they syndicated and sold securities to retail investors in violation of the law without proper licensing, failed to conduct any investigation into the Property, received profits and used investor funds without proper disclosure, provided insufficient information for the

Plaintiffs to evaluate the risks of the investment and engaged in deceptive practices to sell securities without proper oversight and investigation. (*See e.g.* Dkt. 91, ¶ 211). Accordingly, the claim for unfair competition is proper.

### 6.  Claim 12 for Control Person Liability is Proper

"Section 20(a) of the Securities Exchange Act, 15 U.S.C. 78t, provides that '[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person ... unless the controlling person acted in good faith and did not directly or indirectly induce the acts constituting the violation or cause of action.' *See also* 17 C.F.R. 230.405 (defining "control"). To state a control-person claim, plaintiff must establish (1) a primary violation of the federal securities laws, and (2) that defendants exercised actual power or control over the primary violator." *In re LDK Solar Sec. Litig.,* No. C0705182WHA, 2008 WL 4369987, at *12 (N.D. Cal. Sept. 24, 2008).

"[S]ection 20(a) control person claims are subject to the more general notice pleading requirements of Fed. R. Civ. P. 8(a)(2)" not 9(b) or PSLRA. *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.,* 690 F. Supp. 2d 959, 970 (D. Ariz. 2010); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F.Supp.2d 1132, 1201 (C.D. Cal. 2008) ("Although the circumstances of the primary violators' fraud must be pled with particularity under Rule 9(b) [and the PSLRA], the control element is not a circumstance that constitutes fraud and therefore need not be pled with particularity."); *In re LDK Solar Sec. Litig., supra,* at *12.

The Millrock Defendants have not demonstrated that there is no primary violation of Rule 10b5 by Defendant Millcreek Commercial Properties, LLC such that control liability cannot survive against Millrock.  All elements of control person liability are properly pled and, as such, cannot be dismissed as a matter of law.

### E.     If the Court grants the Motion, Leave to Amend Should be Granted

"The purpose of pleading under the Rules 'is to facilitate a proper decision on the

merits.' *Conley v. Gibson*, 355 U.S. 41, 48 (1957). To this end, Rule 15 'was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result.' *United States v. Hougham*, 364 U.S. 310, 316 (1960). 'If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' *Foman v. Davis*, 371 U.S. 178, 182 (1962)." *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789–90 (9th Cir. 1963) (internal citations included).

"'[L]eave shall be freely given when justice so requires.' This policy is 'to be applied with extreme liberality.' *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990))." *Eminence Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003) (finding that failure to grant leave to file Second Amended Complaint was abuse of discretion). Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend. *See Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997). A simple denial of leave to amend without any explanation by the district court is subject to reversal. Such a judgment is 'not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.' *Foman, supra*, 371 U.S. at 182, 83 S.Ct. 227; *Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292–93 (9th Cir. 1983) (noting "where the record does not clearly dictate the district court's denial, we have been unwilling to affirm absent written findings"); *Rolf v. City of San Antonio*, 77 F.3d 823, 828–29 (5th Cir.1996); *United Steelworkers of Am., AFL–CIO v. Mesker Bros. Indus., Inc.*, 457 F.2d 91, 94 (8th Cir. 1972)." *Id.* (internal citations included) (emphasis added).

PLAINTIFFS' OPPOSITION TO DEFENDANTS BRENT SMITH AND MILLROCK INVESTMENT FUND 1, LLC'S MOTION TO DISMISS

"The purpose of pleadings is 'to facilitate a proper decision on the merits,' and not to erect formal and burdensome impediments in the litigation process." *Howey v. U.S.,* 481 F.2d 1187, 1190 (9th Cir. 1973). Liberality in granting leave to amend is "especially important in the context of PSLRA" where "drafting a cognizable complaint can be a matter of trial and error." *Id.* at 1052.

## IV.    **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants Brent Smith and Millrock Investment Fund 1, LLC's Motion to Dismiss First Amended Complaint.  Should the Court grant the Motion, Plaintiffs respectfully request that the Court do so without prejudice and grant leave for Plaintiffs to file an amended complaint.

 Dated: June 27, 2025                    **REIF LAW GROUP, P.C.**

                                         *Rachel D. Dardashti*
                                         _____
                                         Brandon S. Reif
                                         Rachel D. Dardashti

                                         Attorneys for Plaintiffs

PLAINTIFFS' OPPOSITION TO DEFENDANTS BRENT SMITH AND MILLROCK INVESTMENT FUND 1, LLC'S MOTION TO DISMISS