**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANNE L. THART, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COLLIERS INTERNATIONAL GROUP, INC., *et al.*,<br><br>Defendants. | Case No. 2:24-cv-10876-CV (Ex)<br><br>**ORDER GRANTING DEFENDANTS BRENT SMITH, MILLROCK INVESTMENT FUND 1, LLC, DOUGLAS SCHEEL, TROY SCHEEL, AND MOUNTAIN WEST COMMERCIAL LLC'S MOTIONS TO DISMISS [98, 110]** |

Defendants are a collection of entities and individuals involved in the sale of tenancy-in-common ("TIC") interests in a commercial property. Plaintiffs are individual retail investors who purchased such interests. After the investment soured, Plaintiffs lost most of their invested money and filed the present action.

Before the Court are two motions to dismiss Plaintiffs' First Amended Complaint. First, Defendants Brent Smith ("Smith") and Millrock Investment Fund 1 ("Millrock") (collectively, the "Millrock Defendants") moved to dismiss on April 18, 2025. Doc. # 98 ("Millrock Mot."). On June 27, 2025, Plaintiffs Anne L. Thart, Russell Chadwick McAllister, Amy McAllister, Joseph A. Procopio, and Glenn T. Pinder (collectively, "Plaintiffs") opposed. Doc. # 120 ("Millrock Opp."). On July 3, 2025, the Millrock

-1-

Defendants replied. Doc. # 123 ("Millrock Reply"). Second, Defendants Douglas Scheel, Troy Scheel, and Mountain West Commercial, LLC ("Mountain West") (collectively, the "Mountain West Defendants") moved to dismiss on May 2, 2025 (collectively with the Millrock Motion, the "Motions"). Doc. # 110 ("MW Mot."). On May 16, 2025, Plaintiffs opposed. Doc. # 112 ("MW Opp."). On May 23, 2025, the Mountain West Defendants replied. Doc. # 113. ("MW Reply").

The Court finds that oral argument is unnecessary to resolve the Motions. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n. 2 (9th Cir. 2001). Having considered the briefing, the Court **GRANTS** the Motions and **DISMISSES** Plaintiffs' claims against the Millrock and Mountain West Defendants **with leave to amend**.

## I.     INTRODUCTION

Plaintiffs filed this lawsuit on December 18, 2024. Doc. # 1. On April 4, 2025, Plaintiffs filed a First Amended Complaint. Doc. # 91 ("FAC"). Plaintiffs assert the following causes of action against the Millrock Defendants and Mountain West Defendants (collectively, the "Moving Defendants"): securities fraud under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a *et seq.* and Rule 10b-5(b) (Count 1); securities fraud under Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) (Count 2); conversion (Count 7); constructive fraud (Count 8); professional negligence (Count 9); negligent misrepresentation (Count 10); and violation of California's Unfair Competition Law ("UCL") (Count 11). FAC ¶¶ 108–218.

Plaintiffs also assert certain claims against various Moving Defendants. *Id.* Plaintiffs assert two claims of financial elder abuse against the Millrock Defendants (Counts 3 and 4); one claim for breach of fiduciary duty against the Mountain West Defendants and Smith (Count 5); and lastly, claims for aiding and abetting breach of fiduciary duty (Count 6) and control person liability pursuant to Section 20 of the Exchange Act (Count 12) against Defendant Millrock. *Id.* Plaintiffs seek rescission, economic and noneconomic damages, treble damages, restitution, pre-judgment interest,

punitive and exemplary damages, and other relief as the Court deems necessary. *Id.* at Prayer.

## II.    **BACKGROUND**[1]

This action involves five Plaintiffs suing twelve Defendants for securities fraud (among other claims) arising from four transactions that occurred across three states. *Id.* ¶¶ 5–25, 87. Plaintiffs allege Defendants collectively engaged in a conspiracy to defraud them into purchasing fractional interests in a medical facility located in Crockett, Texas (the "Crockett Property"). *Id.* ¶¶ 1, 3, 101. The Crockett Property, located at 200 Renaissance Way, Crockett, TX 75835, is a freestanding ambulatory surgery center that Defendant Millrock purchased from, and leased back to, a tenant—Pulse Physician Organization PLLC ("Pulse"). *Id.* ¶¶ 14–15, 58, 86.

Plaintiffs allege Millrock paid two million dollars for the Crockett Property, which the Defendants then fraudulently represented as worth nine million dollars while marketing and selling interests to retail investors. *Id.* ¶¶ 52, 59, 67, 76, 86. Plaintiffs further allege Defendants also fraudulently represented the Crockett Property as a fully managed investment that would generate stable, passive income. *Id.* ¶ 96. According to the Offering Memorandum allegedly distributed to potential investors, Pulse agreed to pay a minimum rent of "$44,350,000 [sic] per month, with an initial lease term of 15 years" and an 11% increase in its monthly rent per year. *Id.* ¶ 58. Ultimately, however, Plaintiffs allege their investments funded Pulse's start-up and equipment costs for a surgery center at the Crockett Property it agreed to operate but never opened. *Id.* ¶ 98.

In October 2023, Pulse failed to pay rent; *id.* ¶ 94, and in June 2024, Pulse declared bankruptcy. *Id.* ¶ 99. Accordingly, Plaintiffs allegedly lost more than 75% of their investments' value. *Id.* ¶ 76.

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the allegations in the FAC as true and construes them in the light most favorable to Plaintiffs. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016).

Below, the Court summarizes the relevant parties, their roles in the transactions, and the Defendants' material misrepresentations and omissions as alleged in the FAC.

## A.     The Parties

### 1.     Relevant Plaintiffs

Plaintiffs are five individuals who purchased fractional interests in the Crockett Property through 1031 exchanges[2] in four separate transactions. *See id.* ¶¶ 5–11.

**Plaintiff Anne Thart** ("Thart") is sixty-eight years old[3] and lives in Lancaster, California. *Id.* ¶ 6. In October 2022, Thart sold two single family homes for $699,628.45 and deposited the funds with Defendant Southern California Exchange Services ("SCES"), an intermediary run by Defendant Megan Destito. *Id.* In November 2022, with Destito's assistance, Thart used the proceeds from those sales to purchase a 7.3605 percent interest in the Crockett Property. *Id.*

**Plaintiffs Russell Chadwick McAllister and Amy McAllister** (collectively, the "McAllisters") are a married couple living in Washington, Utah. *Id.* ¶ 7. They are fifty-four and fifty-two years old, respectively. *Id.* In 2023, the McAllister's real estate agents, Defendants Doug and Troy Scheel, convinced them to sell a commercial property to purchase an interest in the Crockett Property. *Id.* On January 25, 2023, the McAllisters invested $2,000,000 for a 19.7121 percent interest in the Crockett Property. *Id.*

**Plaintiff Joseph Procopio** ("Procopio") is married to Julie Procopio and lives in Crownsville, Maryland. *Id.* ¶ 8. In 2023, Procopio sold real property he and his wife owned and placed the proceeds of the sale with Eastern Starker 1031 Exchange LLP ("Eastern Starker"), a qualified intermediary. *Id.* Their contact at Eastern Starker convinced Procopio to trust Scott Rutherford of Elevated 1031 Exchange, who

---

[2] A 1031 exchange allows sellers of productive real estate to defer capital gains tax by reinvesting the proceeds into qualifying productive real estate within a certain timeframe. I.R.C § 1031

[3] All ages reflect the age of the party at the time the FAC was filed.

recommended that they invest in the Crockett Property. In May 2023, Joseph Procopio invested $374,989.98 into the Crockett Property. *Id.*

**Plaintiff Glenn Pinder** ("Pinder") is eighty-seven years old and lives in Murray, Utah. *Id.* ¶ 9. In 2004, he retired and sold his business. *Id.* He continued to own the commercial property where his business had operated but sold it in 2022. *Id.* Pinder's wife's grandson, who worked at Millcreek Commercial Properties, LLC, recommended to Pinder that he invest the proceeds from the sale into the Crockett Property. *Id.* In turn, Pinder invested $260,000 into the Crockett Property for a 3.0771 percent interest. *Id.*

### 2.   Millrock Defendants

**Defendant Millrock Investment Fund 1, LLC** ("Millrock") is an investment fund based in Pleasant Grove, Utah. *Id.* ¶ 14. Millrock owned the interests in the Crockett Property that were ultimately sold to Plaintiffs. *Id.* **Defendant Brent Smith** ("Smith") is an individual who acted as a real estate broker and sales agent at Millcreek Commercial Properties, LLC and Millrock when the TIC interests were sold to Plaintiffs. *Id.* ¶ 16.

### 3.   Mountain West Defendants

**Defendant Mountain West Commercial LLC** ("Mountain West") is a real estate brokerage licensed in Utah. *Id.* ¶ 20. As a party to the transactions, Mountain West "processed and participated in receiving commissions" when its brokers sold the McAllisters an interest in the Crockett Property. *Id.* **Defendants Douglas and Troy Scheel** (collectively, "Doug and Troy") are real estate brokers based in Utah who hold their real estate licenses with Mountain West. *Id.* ¶¶ 17–19. Doug and Troy personally convinced the McAllisters to invest in the Crockett Property through a 1031 exchange. *Id.* Doug and Troy executed "Professional Referral Agreements" with Millrock; Doug and Troy received a 3% commission on the Crockett Property interests sold to the McAllisters and Thart. *Id.* ¶ 53.

### 4.   Other Relevant Defendants

**Defendant Colliers International Group, Inc.** ("Colliers"), a Canadian corporation, is a leading diversified professional services and investment management

company. *Id.* ¶ 12. Colliers acted as the broker of record for the Crockett Property TIC sales to Plaintiffs. *Id.* As the broker of record, Colliers prepared marketing materials that prominently displayed its name, including the Offering Memorandum, and provided material support for the transactions in exchange for commissions. *Id.* ¶¶ 12, 30, 34. During the relevant period, Colliers controlled Millcreek Commercial Properties, LLC. *Id.* ¶ 12.

**Defendant Millcreek Commercial Properties, LLC** ("Millcreek") is a limited liability company based in Pleasant Grove, Utah that served as the marketing arm of Millrock. *Id.* ¶¶ 13, 26, 35. Millcreek "represented it was an authorized agent of Millrock" and contracted with Millrock to market TIC interests in its properties to non-conventional real estate investors. *Id.* ¶ 35. As of December 3, 2024, Millcreek's website indicated that it had ceased operations. *Id.* ¶ 24. **Defendant Kevin G. Long** ("Long") is the principal real estate broker, sales agent, manager, CEO, and founder of Millcreek. *Id.* ¶ 15. Long also organized and solely owns **Defendant KGL Advisors, LLC**. *Id.* ¶ 25. Long resides in Utah. *Id.* ¶ 15.

**Defendant CAMS Realty, LLC** ("CAMS Realty") is a limited liability company with its principal place of business in Pleasant Grove, Utah. *Id.* ¶ 23. CAMS Realty is a division of Mountain West. *Id.* **Defendant Mary Street** is the managing member of CAMS Realty. *Id.* CAMS Realty and Mary Street received fees for "'managing' the TIC interests" and served as lease administrators for the Crockett Property. *Id.* ¶¶ 23, 43, 55.

**Defendant Megan Destito** ("Destito"), a California resident, is an individual, principal, and owner of Defendant SCES. *Id.* ¶¶ 21–22. Destito acted as a sales agent and accommodator in connection with Thart's investment in the Crockett Property. *Id.*

### B. Misrepresentations and Omissions

Plaintiffs allege Defendants—through material misrepresentations and omissions—induced them to invest in the Crockett Property. *Id.* ¶ 87. Plaintiffs specifically allege Doug and Troy Scheel, as brokers and agents of Mountain West, made material misrepresentations and omissions to induce the McAllisters to purchase interests

-6-

in the Crockett Property. *Id.* ¶¶ 17–20, 51–54, 78, 81. Plaintiffs also generally allege "Defendants" made certain misrepresentations and omissions to induce "Plaintiffs" to purchase interests in the Crockett Property. *Id.* ¶¶ 67–72, 75–76, 78, 82, 84–85. The Court details these alleged misrepresentations and omissions below, first those specifically attributed to the Mountain West Defendants, and later those attributed generally to Defendants.

Plaintiffs allege the Mountain West Defendants, through a series of material misrepresentations and omissions, recommended the Crockett Property to the McAllisters, induced the McAllisters to invest in it, and received an undisclosed commission from the McAllisters' investment. *See id.* ¶¶ 19, 53–54, 75–76, 78, 84–86, 90. Plaintiffs allege Defendants Doug and Troy made several misrepresentations to the McAllisters during an in-person meeting on January 6, 2023. *See id.* ¶¶ 19, 53–54. These misrepresentations include:

- The investment in the Crockett Property had "no risk because the McAllisters could sell their interests at any time";
- Doug and Troy would not receive compensation in connection with the sale of the Crockett Property to the McAllisters;
- Millcreek, Millrock, and Colliers were professional and knowledgeable;
- Doug and Troy had personally invested in Millcreek properties and would potentially invest in the Crockett Property;
- The Crockett Property would be professionally managed thus the McAllisters "would not have to personally deal with" the property.

(the "**January 6, 2023 Misrepresentations**"). *Id.*

Plaintiffs additionally allege Doug and Troy Scheel reviewed the Offering Memorandum with the McAllisters via telephone in or around January 2023 to encourage them to invest in the Crockett Property. *Id.* ¶¶ 78, 81. The alleged misrepresentations associated with the Offering Memorandum include:

- "Pulse Healthcare System is made up of nine clinic locations across the state of Texas. The twelve healthcare providers at Pulse put one-on-one relationship[s] with their patients at the core of what they do. … Pulse prioritizes state-of-the-art resources. The clinics are equipped with the best technology and treatment options to ensure that patients are feeling better without delay";
- "Pulse Healthcare includes a well-performing vascular surgery portfolio";
- "4 additional locations ideally situated to meet the demand for vascular surgery";
- "15-Year Sale Leaseback on Triple Net (NNN) Leases";
- "Full Corporate Guarantee from Pulse Healthcare";
- "Pandemic, Recession and Internet Resistant Tenant with 8 clinics throughout the Greater Houston area";
- "Landlord Responsibilities None";
- "Insurance / Taxes/CAM/Utilities Responsibility of Tenant."

(the "**Offering Memorandum Misrepresentations**"). *Id.* Plaintiffs allege Colliers, Millcreek, Millrock, Long, and Smith each reviewed and approved the Offering Memorandum's contents. *Id.* ¶ 79. In turn, Plaintiffs allege "Defendants" made many material omissions arising from the Offering Memorandum Misrepresentations. *Id.* ¶ 84. These omissions include:

- "An investment in the Millcreek TIC Properties, including the Property, was not a safe, stable and reliable investment that would generate dependable income, but was risky and unsuitable for any Plaintiff, particularly in light of the tenants' financial condition";
- "The tenants of the properties were insolvent, unprofitable, financially unsustainable";

- "Defendants did not conduct any actual due diligence on proposed tenants and did not have any reliable financial information showing that tenants were successful or solvent";
- "Plaintiffs were not purchasing real estate with value commensurate with their investment. The actual cost of the buildings was substantially less than the price that Plaintiffs were required to pay for their TIC interests, and the fair market value of the buildings as real estate would be only a fraction of the amount of the Plaintiffs' collective TIC Investment";
- "The professionals that introduced Millcreek to Plaintiffs each received substantial commissions."

(the "**Offering Memorandum Omissions**"). *Id.*

Unconnected to the Offering Memorandum Misrepresentations, Plaintiffs allege "Defendants made numerous misrepresentations to Plaintiffs without regard to Plaintiffs' goals, financial position[s] or objectives." *Id.* ¶ 82. Plaintiffs allege these misrepresentations include:

- that the investment "would preserve principal";
- that the investment "would provide an annualized return on equity";
- that the investment "would be operated on a turnkey basis";
- that the investment "would be managed by a property manager";
- that the investment "had no risk and was recession-proof"; and
- that Plaintiffs could "sell their TIC interest at any time."

*Id.* (the "**Investment Condition Misrepresentations**"). In turn, Plaintiffs allege "Defendants failed to disclose" that:

- An investment in the Crockett Property "was not a safe, stable and reliable investment that would generate dependable income, but was risky and unsuitable for any Plaintiff";
- The "tenants of the properties were insolvent, unprofitable, [and] financially unstable";

- "Defendants did not conduct any actual due diligence on proposed tenants and did not have any reliable financial information showing that tenants were successful or solvent";
- "Plaintiffs were not purchasing real estate with value commensurate with their investment" because Defendants purchased the Crockett Property from the tenant for two million dollars but valued it at nine million dollars when offering interests to the Plaintiffs;
- "The Professionals that introduced Millcreek to Plaintiffs each received substantial commissions";
- "The tenant did not operate a surgery center from the [Crockett] Property."

(the "**Investment Condition Omissions**"). *Id.* ¶¶ 75–76, 84–86, 90. Relatedly, and lastly, Plaintiffs allege Millcreek, Long, Andrew Bell,[4] and Smith, in 2022 and 2023, sent untrue email solicitations to prospective investors about the Pulse Healthcare Systems portfolio. *Id.* ¶¶ 41, 44. Those emails allegedly stated:

- "Medical office buildings usually have lower vacancy rates than other types of commercial property";
- "Medical propert[ies] generally produce a steady cash flow for investors";
- Healthcare is a 'recession resilient product.'"

(the "**Marketing Misrepresentations**"). *Id.* ¶ 41.

## III.   LEGAL STANDARD

### A.    Rule 12(b)(2) Motion to Dismiss

On a defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of establishing that jurisdiction is proper." *See*

---

[4] Mr. Bell is not a party to this lawsuit. FAC ¶ 30. Mr. Bell is allegedly Defendant Long's employee and Plaintiff Glenn Pinder's wife's grandson. *Id.* ¶ 9.

*Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). If the motion "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (citation modified). "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true." *Id.* (citation modified).

The Exchange Act provides for nationwide service of process; consequently, "the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985) (citation modified); *see also* 15 U.S.C. § 78aa. Accordingly, if the defendant has sufficient minimum contacts with the United States, "the Act confers personal jurisdiction over the defendant in any federal district court." *Warfield v. Alaniz*, 569 F.3d 1015, 1029 (9th Cir. 2009) (quoting *Vigman*, 764 F.2d at 1316).

### B.    Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Through Rule 12(b)(6), defendants challenge the legal sufficiency of allegations asserted in a complaint. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts "to state a cognizable legal theory." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations

-11-

omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (internal citations omitted). Under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159. Legal conclusions without factual support "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

When a plaintiff asserts private securities fraud claims, their allegations must meet heightened pleading requirements under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014). Under Rule 9(b), a party alleging fraud or mistake must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P 9(b). This includes "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation modified). Similarly, under the PSLRA, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

"Unlike Rule 9(b), the PSLRA also requires a plaintiff to plead scienter with particularity: a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1164 (9th Cir. 2009) (quoting 15 U.S.C. § 78u-4(b)(2)). "To satisfy the requisite state of mind element, a complaint must allege that the defendant made false or misleading statements either intentionally or with deliberate recklessness." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (citation modified). Such allegations must show a plausible inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

-12-

## IV.    DISCUSSION

The Moving Defendants principally argue Plaintiffs' FAC constitutes impermissible shotgun pleading. MW Mot. at 21; Millrock Mot. at 11–13.[5] Consequently, the Moving Defendants argue Plaintiffs fail to adequately plead misrepresentations under Rule 9(b) and the PSLRA or scienter under the PSLRA. *Id.* The Mountain West Defendants also argue this court lacks personal jurisdiction over them and Plaintiffs' Rule 10b-5(b) claim is time-barred.  MW Mot. at 11–16. In opposition, Plaintiffs argue their allegations adequately distinguish between the five individual Moving Defendants. MW Opp. at 18–19; Millrock Opp. at 17.

While the Court agrees with the Moving Defendants that the FAC constitutes improper shotgun pleading, the Court also finds Plaintiffs sufficiently allege the Mountain West Defendants made material misrepresentations to the McAllisters. Accordingly, the Court addresses the Mountain West Defendants' arguments to personal jurisdiction, the statute of limitations, and scienter in addition to the Moving Defendants' shotgun pleading argument below.

### A.    Personal Jurisdiction

The Mountain West Defendants argue the Court lacks personal jurisdiction over them because they lack sufficient minimum contacts with California.[6] MW Mot. at 11–16; MW Reply at 9. The Exchange Act, however, confers personal jurisdiction in any federal district court over defendants having minimum contacts with the United States. *Vigman*, 764 F.2d at 1315–16 ("[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in

---

[5] All record citations reference CM/ECF pagination.

[6] To the extent the Mountain West Defendants seek to challenge venue for the first time in their Reply, they have waived such an argument by failing to include it in their Motion which specifically seeks to dismiss Plaintiffs' claims under Rules 12(b)(2) and 12(b)(6). Reply at 8–9; *see Johnson v. Mazza*, 2016 WL 11505457 at *3 (C.D. Cal. July 5, 2016) ("The defense of improper venue is waived if omitted in a preanswer Rule 12 motion.").

any federal district court."). Here, Plaintiffs assert claims under the Exchange Act against the Mountain West Defendants; FAC ¶¶ 108–28, and the Mountain West Defendants concede they are citizens of Utah. *See* MW Mot. at 9. Accordingly, such contacts with the United States confer personal jurisdiction in this district over the claims Plaintiffs bring against them under the Exchange Act. The Court, however, declines to address personal jurisdiction as to the state law claims because, as discussed below, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

**B.      The Exchange Act**

Section 10(b) of the Exchange Act makes it unlawful "for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." *Stoneridge Inv. Partners v. Scientific-Atlanta*, 552 U.S. 148, 156 (2008) (quoting 15 U.S.C. § 78j). The SEC, pursuant to Section 10(b), promulgated Rule 10b-5, which makes it unlawful for any person:

> (a)      To employ any device, scheme, or artifice to defraud,
>
> (b)      To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c)      To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

*Id.* at 156–57 (quoting 17 C.F.R. § 240.10b-5). Here, Plaintiffs allege two Rule 10b-5 claims, one under Rule 10b-5(b), and another under Rules 10b-5(a) and (c), against each Moving Defendant. FAC ¶¶ 108–28.

**1.      Plaintiffs' Rule 10b-5(b) Claim is not Time Barred**

As a preliminary matter, the Mountain West Defendants argue that Plaintiffs' Rule 10b-5(b) claim is time barred. MW Mot. at 18–19. However, the Mountain West

-14-

Defendants incorrectly point to 15 U.S.C. § 77b(a)(1) to support this claim; that section sets a one-year statute of limitations for claims brought under the Securities Act of 1933. 15 U.S.C. § 77b(a)(1). However, Plaintiffs' Rule 10b-5(b) claims arise under the Exchange Act, which contemplates a longer statute of limitations. FAC ¶¶ 113, 124. Consequently, Plaintiffs' Rule 10b-5(b) claims "may be brought not later than the earlier of—(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b); *accord Turan Petroleum, Inc. v. Vanetik*, 2009 WL 10673984, at *3 (C.D. Cal. June 4, 2009). The Mountain West Defendants do not contend Plaintiffs claims are time barred under 28 U.S.C. § 1658(b). MW Mot. at 18.

Here, Plaintiffs allege they were unaware of the alleged misrepresentations and omissions until Pulse failed to pay rent in October 2023. Compl. ¶¶ 94–100. Moreover, Plaintiffs allege Long disclosed material information—alerting them to the alleged fraud—for the first time in April 2024. *Id.* ¶ 98 ("Plaintiffs had not been informed that Pulse was a startup enterprise before this writing in April 2024."). Plaintiffs filed their original complaint in this Court on December 18, 2024; consequently, Plaintiffs' claims are timely. Accordingly, the Court rejects the Mountain West Defendants' statute of limitations argument.

2.    Plaintiffs' First Cause of Action Under Rule 10b-5(b)

The Moving Defendants argue Plaintiffs fail to sufficiently plead that any one of the Defendants made material misrepresentations or omissions. MW Mot. at 20–22; Millrock Mot. at 11–12. Alternatively, the Moving Defendants argue that even if Plaintiffs sufficiently plead material misrepresentations, they fail to sufficiently plead scienter. MW Mot. at 21–22; Millrock Mot. at 12–14.

Claims under Rule 10b-5(b) are premised upon material misrepresentations. *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011). Under Section 10(b) and Rule 10b-5(b), "a plaintiff must plead that: (1) defendant made a misrepresentation or misleading omission of material fact; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a

security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).

Under the Exchange Act, statements are material misrepresentations or omissions (i.e., false) if they "directly contradict what the defendant knew at that time." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). "To be misleading, a statement must be capable of objective verification." *Id.* (citation modified). A statement may be misleading—even if the statement is not false—if it omits material information. *Id.* at 1008–09. Thus, "disclosure is required only when necessary 'to make statements made, in the light of the circumstances under which they were made, not misleading.'" *Id.* (citation modified) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). Pure omissions, however, are not actionable under Rule 10b-5(b). *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 260 (2024) ("A pure omission occurs when a speaker says nothing, in circumstances that do not give any particular meaning to that silence. . . . Half-truths, on the other hand, are 'representations that state the truth only so far as it goes, while omitting critical quality information'" (quoting *Universal Health Servs., Inc v. United States ex rel. Escobar*, 579 U.S. 176, 188 (2016))). Regardless of whether a plaintiff alleges misrepresentation or omission, they must allege materiality. *Khoja*, 899 F.3d at 1009. A statement or omission is material if there is a substantial likelihood that a reasonable investor would have acted differently absent the misrepresentation or, in the case of omission, adequate disclosure. *Id.*

Further, to adequately allege a material misrepresentation or omission, a plaintiff must plead that the defendant is the "maker" of the relevant statement, or "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Persons or entities "who do not 'make' statements . . . but who disseminate false or misleading statements to potential investors with the intent to defraud, can be found to have violated the other parts of Rule 10b-5, [such as] subsections (a) and (c)," but not subsection (b). *Lorenzo v. SEC*, 587 U.S. 71, 74 (2019).

-16-

a.    Mountain West Defendants' Misrepresentations and Omissions

The Mountain West Defendants argue Plaintiffs fail to adequately plead misrepresentations because Plaintiffs' allegations are unclear and require them to "guess which of the preceding paragraphs applies to the Section 10(b)/Rule 10b-5 claim." MW Mot. at 21. The Court disagrees.

The alleged January 6, 2023 Misrepresentations include specific statements Doug and Troy made, as agents of Mountain West, to the McAllisters to sell them an interest in the Crockett Property. The McAllisters allege Doug and Troy represented the Crockett Property as a risk-free, fully-managed, and passive-income-generating investment which the McAllisters could sell at any time. FAC ¶¶ 7, 17–19, 54. Yet Plaintiffs allege the Crockett Property's tenant was a start-up and that there was no onsite property manager. *Id.* ¶¶ 96, 98. Moreover, the McAllisters specifically allege, at that January 6 meeting, Doug and Troy told the McAllisters that they would not receive a commission in connection with the sale. *Id.* ¶¶ 19, 53. Yet Plaintiffs allege Doug and Troy received a three precent commission on the McAllisters' purchase. *Id.* ¶ 53.

Claims that the Crockett Property was risk-free, that the Crockett Property would be professionally managed such that the McAllisters need not personally deal with its operations, and that Doug and Troy would not be compensated if the McAllisters purchased an interest in the Crockett Property are clearly material. The differences between such statements and the apparent reality of the Crockett Property's risk profile, management, and sales commission structure are sufficiently stark to suggest Doug and Troy's statements were false when made. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010) (holding that statements constitute material misrepresentations under Section 10(b) "if there is no reasonable basis for the speaker's belief in the statement's accuracy"). At bottom, the alleged January 6, 2023 Misrepresentations "create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

Accordingly, the Court rejects the MW Motion insofar as it seeks to dismiss Plaintiffs' claims under Rule 12(b)(6) for failure to plead material misrepresentations.

b. Millrock Defendants' Misrepresentations and Omissions

Plaintiffs allege "Defendants" made (1) the Offering Memorandum Misrepresentations, (2) the Offering Memorandum Omissions, (3) the Investment Condition Misrepresentations, and (4) the Investment Condition Omissions to prospective investors. FAC ¶¶ 75–76, 78, 81–82, 84–86, 90. Plaintiffs specifically allege Smith made the Marketing Misrepresentations to "prospective investors." *Id.* ¶ 41. The Millrock Defendants, in turn, argue "[o]n the face of the [FAC], it is not clear which, if any, Plaintiffs Smith or Millrock are alleged to have interacted with, whether any such interaction was direct or indirect, [or] when such interactions took place." Millrock Mot. at 7. The Court agrees with the Millrock Defendants that to whom they made what misrepresentations and omissions is unclear.

The Ninth Circuit makes clear "shotgun" pleadings[7] violate Rule 8—and thus also violate the more stringent pleading standards under Rule 9(b) and the PSLRA. *See Gibson v. City of Portland*, 165 F.4th 1265, 1288–1290. (9th Cir. 2026); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (holding that Rule 9(b) does not permit group pleading). In multi-defendant fraud actions, Plaintiffs must "differentiate their allegations and inform each defendant separately of the allegations surrounding their alleged participation in the fraud." *Swartz*, 476 F.3d at 764 (citation modified). Merely lumping all defendants together is insufficient. *Id*. at 764–65. "[D]istrict courts do not have to accept such shotgun pleadings. It is not the job of the district courts to make sense of the pleading [or] to supply facts to support the claim." *Gibson*, 165 F.4th at 1289.

---

[7] The Ninth Circuit defines "four main types of shotgun pleadings," two are relevant here: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to be a combination of the entire complaint;" and (2) "a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Gibson*, 1654 F.4th at 1288.

-18-

Here, Plaintiffs fail to sufficiently identify the Millrock Defendants' specific misrepresentations, to whom they were made, and when. Plaintiffs allege "Defendants" made the Offering Memorandum Misrepresentations and Smith and Millrock (among others) reviewed and approved the memorandum's contents. *Id.* ¶¶ 78–79. Similarly, Plaintiffs allege "Defendants" failed to provide them with essential information constituting the Material Omissions and Offering Memorandum Omissions. *Id.* ¶¶ 73, 75–76, 84, 90. Plaintiffs also allege Smith emailed "prospective investors about the Pulse Healthcare Systems portfolio in 2022 and 2023"; however, Plaintiffs fail to allege to whom Smith sent such emails, when in those years Smith sent them, or what about them is materially misleading given they do not specifically reference the Crockett Property. *Id.* ¶ 41.

From such allegations, the Court cannot determine whom of the many Plaintiffs in this action the Millrock Defendants misled through actionable misrepresentations or omissions. Unlike the allegations regarding Doug and Troy, Plaintiffs fail to sufficiently allege the who, what, when, and where required under Rule 9(b) and the PSLRA as to the Millrock Defendants' misrepresentations and omissions such that the Millrock Defendants can identify what allegations specifically pertain to them.

Accordingly, the Court **DISMISSES without prejudice** Plaintiff's Section 10b and Rule 10b-5(b) claim against the Millrock Defendants.

c.    Mountain West Defendants' Scienter

The Mountain West Defendants next argue Plaintiffs fail to plead specific allegations to show they acted intentionally or with deliberate recklessness in making any misrepresentations. MW Mot. at 21–22. The Court agrees.

To adequately allege scienter, "the pleading has to state particularized facts that, taken as a whole, raise a strong inference that defendants intentionally or with deliberate recklessness" committed the alleged securities fraud. *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001); *see also Rubke*, 551 F.3d at 1165 (holding "[u]nlike Rule 9(b), the PSLRA also requires a plaintiff to plead scienter with particularity"). To evaluate

scienter, courts must consider "all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *In re LifeLock, Inc. Sec. Litig.*, 690 F. App'x 947, 950 (9th Cir. 2017) (quoting *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002)). "Facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness." *In re VeriFone*, 704 F.3d at 701.

As an initial matter, Plaintiffs argue "falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, and the two requirements may be combined into a unitary inquiry under the PSLRA." MW Opp. at 17–18 (alteration omitted) (quoting *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005)); Millrock Opp. at 16 (same). However, subsequent Supreme Court decisions that treated falsity and scienter as separate requirements abrogated the Ninth Circuit's combined approach. *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023) (citing *Tellabs*, 551 U.S. at 315–18) ("[A]lthough some facts might be used to support both an inference of scienter and an inference of falsity, our decisions issued after *Tellabs* have consistently refrained from co-mingling the inquiries."). Accordingly, Plaintiffs must plead facts independent of falsity to establish the Mountain West Defendants acted intentionally or with deliberate recklessness.

Plaintiffs allege generally that the "Defendants acted with scienter in making these misstatements, omissions, and engaging in manipulative and deceptive practices." FAC ¶ 111. This allegation highlights the pleadings' shotgun nature; Plaintiffs fail to connect this allegation to any previous allegation to establish the Mountain West Defendants acted intentionally or with deliberate recklessness. Indeed, this allegation, aimed at "Defendants," implicates twelve distinct parties. Such an allegation, following incorporation by reference of the entire FAC, *id.* ¶ 108, leaves the Court and the Mountain West Defendants to wonder which allegations specifically allege scienter as to Doug and Troy Scheel and Mountain West. Consequently, Plaintiffs' allegations as to scienter fail to pass muster under the PSLRA's operative pleading requirement.

In opposition, Plaintiffs argue the Mountain West Defendants allegedly failed to conduct due diligence and consequently acted with scienter. MW Opp. at 20. In the FAC, Plaintiffs allege that "Defendants negligently or willfully failed to investigate tenants and guarantors for their properties and disregarded signs and indicators that did not support the Defendants' advertised claims to induce sales of the TIC Properties." FAC ¶ 66. Again, however, Plaintiffs fail to specify which Defendants failed to investigate what tenants and guarantors and what "signs and indicators" such Defendants allegedly disregarded. *See id.* Moreover, Plaintiffs fail to elucidate how this dearth of due diligence establishes Defendants' intentionality or deliberate recklessness. Consequently, Plaintiffs fail to specifically allege how Doug and Troy, on behalf of Mountain West, committed securities fraud intentionally or with deliberate recklessness.

Accordingly, the Court **DISMISSES without prejudice** Plaintiffs' Section 10b and Rule 10b-5(b) claims against the Mountain West Defendants.

### 3.    Plaintiffs' Second Cause of Action Under Rule 10b-5(a) and (c)

Moving Defendants argue Plaintiffs' Rule 10b-5(a) and (c) claims fail because Plaintiffs fail to plead actionable conduct or that Moving Defendants acted with scienter. MW Mot. at 22; Millrock Mot. at 10–14. Plaintiffs respond that they sufficiently allege the Millrock and Mountain West Defendants participated in a deceptive conspiracy to disseminate false and misleading statements about the Crockett Property to prospective investors for financial gain. Millrock Opp. at 20–21; MW Opp. at 22. The Court disagrees.

Claims under Rules 10b-5(a) and (c) are generally referred to as claims for "scheme liability." *Spot Runner, Inc.*, 655 F.3d at 1057. Rule 10b-5(a) prohibits persons from employing "any device, scheme, or artifice to defraud" and Rule 10b-5(c) prohibits persons from engaging "in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." *Id.* (citing 17 C.F.R. §§ 240)). For a defendant to be liable as part of a fraudulent scheme based upon misrepresentations or omissions under Rules 10b-5(a) or (c), the scheme must also encompass conduct beyond

such misrepresentations or omissions. *Id.* A plaintiff may allege that a defendant violated subsections (a) and (c) under either a dissemination theory—meaning engaging in the "dissemination of false or misleading statements with intent to defraud"—or a traditional conduct-based scheme liability theory. *See Sneed v. AcelRx Pharms., Inc.*, 2022 WL 4544721, at *6 (N.D. Cal. Sept. 28, 2022) (citing *Lorenzo*, 587 U.S. at 78–79).

Under Rules 10b–5(a) or (c), a plaintiff must allege: "(1) a device, scheme or artifice to defraud, or an act, practice or course of business that operates as fraud; (2) in connection with the purchase or sale of securities; (3) scienter; and (4) the use . . . of interstate commerce." *SEC v. Zouvas*, 2016 WL 6834028, at *5 (S.D. Cal. Nov. 21, 2016) (citing 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5; *SEC v. Phan*, 500 F.3d 895, 907–08 (9th Cir. 2007)). Under the PSLRA, in any action that requires a plaintiff to prove a "defendant acted with a particular state of mind" (i.e., scienter), "the complaint shall, with respect to each act or omission alleged to have violated this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *accord Rubke*, 551 F.3d at 1164 (holding "[u]nlike, Rule 9(b), the PSLRA also requires a plaintiff to plead scienter with particularity").[8]

Plaintiffs' scheme liability claims fail as to the Moving Defendants for the same reasons as their 10b-5(b) claims. First, Plaintiffs' group pleading as to the Millrock Defendants is impermissible. *See Gibson*, 165 F.4th at 1287–90; *see also In re New Century*, 588 F. Supp. 2d 1206, 1218–19 ("Neither courts nor defendants should have to

---

[8] In opposition, Plaintiffs assert the PSLRA's pleading requirements do not apply to claims under Rules 10b-5(a) and (c). MW Opp. at 21. The Court disagrees. While the PSLRA's pleading requirement as to "misleading statements and omissions" are inapplicable to scheme liability claims that do not require such statements or omissions, the PSLRA's "required state of mind" standard is applicable to scheme liability claims. *See* 15 U.S.C. § 78u-4(b)(2)(A); *cf. Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252–53 (3d Cir. 2009) (explaining the "PSLRA provides two distinct pleading requirements"—each a plaintiff must plead with particularity); *see also Kreek v. Wells Fargo & Co.*, 652 F. Supp. 2d 1053, 1063 (N.D. Cal. 2009) (citing *Tellabs*, 551 U.S. at 328) ("In 2007, the Supreme Court explained that the PSLRA requires a stringent pleading standard for scienter.").

wade through the morass of 'puzzle pleadings' as this wastes judicial resources and undermines the requisite notice for a defendant to respond."). As discussed above, such group pleading frustrates the Court's ability to discern whom the Millrock Defendants defrauded through what specific acts. Second, claims under Rules 10b-5(a) and (c) require Plaintiffs to allege the defendant acted with scienter. As discussed above, Plaintiffs fail to sufficiently allege scienter as to the Mountain West Defendants under the pleading requirements set forth in the PSLRA. *See* 15 U.S.C. § 78u-4(b)(2)(A).

Accordingly, Plaintiffs, Section 10(b) and Rules 10b-5(a) and (c) claims (Count 2) against the Moving Defendants are **DISMISSED without prejudice**.

#### 4.    Plaintiffs' Twelfth Cause of Action under Section 20(a)

Section 20(a) of the Exchange Act prohibits trading "while in possession of material, nonpublic information." 15 U.S.C. § 78t-1. To state a claim for a violation of Section 20(a), Plaintiffs must first allege a violation of Section 10(b). *In re VeriFone*, 11 F.3d at 872 (holding a district court properly dismissed the plaintiffs' Section 20(a) claim because plaintiffs "failed to allege an actionable independent underlying violation" of the Exchange Act). As discussed above, Plaintiffs fail to plead a Section 10(b) violation against the Moving Defendants.

Accordingly, Plaintiffs' Section 20(a) claims (Count 12) against Defendant Millrock is **DISMSSED without prejudice**.

### C.    Plaintiffs' Remaining State Law Claims

Given the Court dismisses each of Plaintiffs' federal claims, it declines to exercise supplemental jurisdiction over Plaintiffs' state claims. *See Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice.")

Accordingly, Plaintiffs' claims for conversion (Count 7), constructive fraud (Count 8), professional negligence (Count 9), negligent misrepresentation (Count 10), and violation of the UCL (Count 11) against the Moving Defendants are **DISMISSED**

**without prejudice**. Plaintiffs' claims for financial elder abuse (Counts 3 and 4) against the Millrock Defendants are also **DISMISSED without prejudice**. Plaintiffs' breach of fiduciary duty claim (Count 5) against Defendants Mountain West, Doug Scheel, Troy, Scheel, and Smith, **are DISMISSED without prejudice**. And finally, Plaintiffs' aiding and abetting breach of fiduciary duty claim (Count 6) against Defendant Millrock is **DISMISSED without prejudice**.

### D.    Leave to Amend

"Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment." *Doe v. Grindr Inc.*, 709 F. Supp. 3d 1047, 1051 (C.D. Cal. 2023), *aff'd*, 128 F.4th 1148 (9th Cir. 2025) (citing Fed. R. Civ. P. 15(a)). A court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Accordingly, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011).

Here, Plaintiffs seek leave to amend their FAC. The Millrock Defendants oppose and argue that Plaintiffs already filed an amended complaint and were on notice of the deficiencies in their original complaint. Millrock Reply at 15. However, given that this alone does not establish futility, and considering the Ninth Circuit's policy of granting leave with "extreme liberality," *see Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003), the Court **GRANTS** Plaintiffs leave to file a second amended complaint. If Plaintiffs decide to file a second amended complaint, they must address the deficiencies identified herein.

///

///

///

-24-

## V.  CONCLUSION

For the aforementioned reasons, the Motions are **GRANTED**. All causes of action against the Moving Defendants are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' request for leave to amend the FAC is **GRANTED**. If Plaintiffs decide to file a second amended complaint, they shall do so within twenty-one (21) days from the entry of this Order.

**IT IS SO ORDERED.**

DATED:  7/7/26

*Cynthia Valenzuela*

HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE