Timothy D. Wallner, *Pro Hac Vice*
Stephanie R. Boord, *Pro Hac Vice*
BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone: (816) 561-7007
Facsimile: (816) 561-1888
Email: twallner@berkowitzoliver.com
sboord@berkowitzoliver.com

Heather Mayer, SBN #210544
NOLAN HEIMANN LLP
16000 Ventura Blvd., Suite 1200
Encino, California 91436
Telephone: (818) 574-5710
Facsimile: (818) 574-5689
Email: hmayer@nolanheimann.com

*Attorneys for Defendants Brent Smith and Millrock Investment Fund 1, LLC*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

ANNE L. THART, an individual and trustee of THE ANNE L. THART LIVING TRUST DATED JULY 1, 1998; et al.,

Plaintiffs,

v.

COLLIERS INTERNATIONAL GROUP, INC., a Canadian corporation, et al.,

Defendants.

Case No. 2:24-cv-10876-CV-E

**DEFENDANTS BRENT SMITH AND MILLROCK INVESTMENT FUND 1, LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Hearing:
Date: October 23, 2026
Time: 1:30 p.m.
Judge: Hon. Cynthia Valenzuela
Ctrm: 10B, 10th Floor

## TABLE OF CONTENTS


I. INTRODUCTION ..... 7

II. ARGUMENT ..... 7

A. The SAC Does Not Cure the Deficiencies the Court Identified. ..... 7

1. The SAC Does Not Satisfy the Standards the Court Applied. ..... 7

2. The E-mail Allegation Against Smith Is Unchanged. ..... 8

3. The Blog Posts and Website Do Not Supply the Missing Particularity. ..... 9

B. Neither Millrock Nor Smith Is the "Maker" of the Offering Memorandum. ..... 9

1. The SAC Attributes the Offering Memorandum to Colliers and Intermountain, Not Millrock. ..... 10

2. Paragraph 75's "Veto" Allegation is a Legal Conclusion. ..... 11

3. Smith's Alleged Approval Was, at Most, on Behalf of an Entity ..... 11

C. Plaintiffs' New Agency Theory Cannot Rescue the First Cause of Action. ..... 12

D. The SAC Still Fails to Plead Scienter as to Millrock or Smith. ..... 13

1. The SAC Does Not Identify Whose State of Mind Is Attributed to Millrock. ..... 13

2. The FFE Payment Does Not Support a Strong Inference of Fraud. ..... 13

3. Plaintiffs Concede That the "Markup" Figure is Not an Acquisition Price. ..... 14

4. The Remaining Allegations Are Motive and Status. ..... 14

E. The Sixth Cause of Action for Scheme Liability Fails. ..... 15

F. The Sixteenth Cause of Action for Control Person Liability Fails. ..... 16

G. Plaintiffs' State-Law Claims Should Be Dismissed. ..... 16

1. The Court Should Again Decline Supplemental Jurisdiction. ..... 16

2. Rule 9(b) Applies, and the SAC Does Not Satisfy It. 16

3. The Fiduciary Duty and Aiding-and-Abetting Claims Fail. 17

4. The Conversion Claim Fails. 17

5. The Negligence-Based Claims Fail. 18

6. The Elder Abuse and Utah Exploitation Claims Fail. 18

7. The UCL Claim Fails. 19

H. The Court Should Dismiss with Prejudice. 19

III. CONCLUSION 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
No. 17-CV-03805-LHK, 2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ...................... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 11

*Asing v. Hawaii Gov't Emps. Ass'n*,
No. 24-3101, 2025 WL 1588732 (9th Cir. June 5, 2025) ........................................... 19

*Batwin v. Occam Networks, Inc.*,
No. CV 07-2750, 2008 WL 2676364 (C.D. Cal. July 1, 2008) .................................. 16

*Casey v. U.S. Bank Nat'l Ass'n*,
127 Cal. App. 4th 1138 (2005) ................................................................................. 17

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) ................................................................................... 19

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004) ................................................................................... 9

*Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ................................................................................... 13

*Hollinger v. Titan Cap. Corp.*,
914 F.2d 1564 (9th Cir. 1990) ................................................................................. 12

*Horiike v. Coldwell Banker Residential Brokerage Co.*,
1 Cal. 5th 1024 (2016) ............................................................................................ 17

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ..................................................................................... 15

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015) ................................................................................... 12

*In re CytRx Corp. Sec. Litig.*,
No. CV 14-1956-GHK, 2015 WL 5031232 (C.D. Cal. July 13, 2015) ........................ 11

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) .......... 14

*Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) .......... 10, 11

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .......... 19

*Kim v. Westmoore Partners, Inc.*, 201 Cal. App. 4th 267 (2011) .......... 18

*Lorenzo v. SEC*, 587 U.S. 71 (2019) .......... 15

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024) .......... 15

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) .......... 14

*Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328 (C.D. Cal. 2014) .......... 16

*Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194 (9th Cir. 1998) .......... 12, 19

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) .......... 12

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008) .......... 15

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .......... 8, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .......... 13

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .......... 16

*Voris v. Lampert*,
7 Cal. 5th 1141 (2019) .......... 18

*Wade v. Reg'l Credit Ass'n*,
87 F.3d 1098 (9th Cir. 1996) .......... 16

*Welco Elecs., Inc. v. Mora*,
223 Cal. App. 4th 202 (2014) .......... 18

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .......... 14, 19

**Statutes**

15 U.S.C. § 78u-4(b)(1) .......... 9

15 U.S.C. § 78u-4(b)(2)(A) .......... 13

28 U.S.C. § 1367(c)(3) .......... 16

Cal. Civ. Code § 2079(a) .......... 17

Cal. Civ. Code § 2079.13(b) .......... 17

Cal. Civ. Code § 2079.16 .......... 17

Cal. Civ.Code § 2079 .......... 17

Defendants Brent Smith ("Smith") and Millrock Investment Fund 1, LLC ("Millrock") (together, the "Millrock Defendants") submit this Reply in support of their Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC").

## I. INTRODUCTION

The Court dismissed Plaintiffs' claims against the Millrock Defendants because Plaintiffs did not identify "the Millrock Defendants' specific misrepresentations, to whom they were made, and when." Order (Dkt. 152) at 19. As to Smith's alleged e-mails, the Court specified what was missing: "to whom Smith sent such emails, when in those years Smith sent them, or what about them is materially misleading given they do not specifically reference the Crockett Property." *Id.* Plaintiffs' Opposition (Dkt. 179) ("Opp'n") identifies no SAC allegation that answers those questions. It instead recasts allegations the Court already rejected and advances an agency theory the First Cause of Action does not plead.

The SAC rests on the same "reviewed and approved" allegation the Court found insufficient, an e-mail allegation unchanged in every respect the Court identified, and blog posts published years before Millrock acquired the Property. After three attempts, the SAC should be dismissed as to the Millrock Defendants with prejudice.

## II. ARGUMENT

### A. The SAC Does Not Cure the Deficiencies the Court Identified.

#### 1. The SAC Does Not Satisfy the Standards the Court Applied.

Plaintiffs contend the SAC "answers" the Court's Order. Opp'n at 8. As to the Millrock Defendants, it does not. The Court required Plaintiffs to allege "the who, what, when, and where required under Rule 9(b) and the PSLRA as to the Millrock Defendants' misrepresentations and omissions," Order at 19, and to plead scienter through particularized facts, independent of falsity, giving rise to a strong inference of intentional or deliberately reckless conduct—a standard that "[f]acts showing mere recklessness or a motive to commit fraud and opportunity to do so" do not meet. *Id.* at 19–20. Those requirements govern the claims against the Millrock Defendants, and the SAC does not satisfy them.

Nor is the SAC's central allegation new. Plaintiffs say Smith's liability rests on the Offering Memorandum he allegedly approved—"allegations the FAC did not contain and the Order therefore never evaluated." Opp'n at 15. Not so. The FAC alleged that Colliers, Millcreek, Millrock, Long, and Smith each reviewed and approved the Offering Memorandum's contents, and the Court rejected that allegation. Order at 8 (citing FAC ¶ 79, 19.) The SAC merely changes "before it was finalized" to "before it was disseminated to Plaintiffs." *Compare* SAC ¶¶ 64, 75 *with* Mot. at 10 (quoting FAC ¶ 79).

**2. The E-mail Allegation Against Smith Is Unchanged.**

The Court faulted the FAC for not alleging to whom Smith sent the "Pulse Healthcare Systems portfolio" e-mails, when, or what about them was misleading "given they do not specifically reference the Crockett Property." Order at 19. The SAC still alleges only that Millcreek, "through Long, Smith, and non-party Andrew Bell," e-mailed "prospective investors, including Plaintiffs," sometime "in 2022 and 2023." SAC ¶ 59. It adds a phrase describing the properties as suited to investors seeking "a safe, secure and stable investment," *id.*, but still identifies no recipient, date, e-mail, or statement about the Property. Plaintiffs respond only that the Property was "part of" the portfolio (Opp'n at 15)—the allegation the Court already found insufficient.

Nor does paragraph 59 allege, as Plaintiffs claim, that "Smith *himself* sent" the e-mails. Opp'n at 15; *see id.* at 22. It alleges that Millcreek sent e-mails "through" three people without attributing any e-mail to any one of them—the group attribution Rule 9(b) forbids. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). Plaintiffs invoke *Swartz*'s statement that there is "no absolute requirement" to identify statements "made by each and every defendant." Opp'n at 14. But *Swartz* pairs that statement with the rule that a complaint may not "merely lump multiple defendants together" and must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." 476 F.3d at 764–65 (citation omitted). Paragraph 59 does neither.

//

//

### 3. The Blog Posts and Website Do Not Supply the Missing Particularity.

Plaintiffs fall back on two Millcreek blog posts "authored, reviewed, or approved by Long and Smith." Opp'n at 15 (citing SAC ¶¶ 62–63). *First*, the posts are dated March 18, 2020 and October 27, 2021 (SAC ¶¶ 62–63)—long before Millrock acquired the Property on October 11, 2022 (SAC ¶ 42)—and the SAC does not allege that they concerned the Property. *Second*, the disjunctive "authored, reviewed, *or* approved" does not tell Smith what he allegedly did; it describes three different levels of involvement and attributes unspecified combinations of them to two people at once. *Third*, the only allegation tying Smith to Millcreek's blog posts and e-mails generally is pleaded "on information and belief" (SAC ¶ 63) without the supporting facts the PSLRA requires. 15 U.S.C. § 78u-4(b)(1).[1]

Plaintiffs' attempt to supply the "to whom" and "when" also fails. They say the recipients are all five Plaintiffs, who "personally visited and reviewed" the website, and that the timing is "bounded by" their purchase dates, from October 2022 through May 2023. Opp'n at 15. Identical boilerplate website visits on unstated dates (SAC ¶¶ 14–18) are not the "time, place, and specific content" Rule 9(b) demands. *Swartz*, 476 F.3d at 764 (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). And the website statements Plaintiffs quote (SAC ¶¶ 57–58) are Millcreek's; indeed, in the referral agreement attached to the SAC as Exhibit B, it is Millcreek that represents that the "information provided on the website" is "complete, accurate, and true." Dkt. 163-2 ¶ 6.

## B. Neither Millrock Nor Smith Is the "Maker" of the Offering Memorandum.

The First Cause of Action also fails because the SAC does not plead that Millrock

[1]Plaintiffs also cite Millcreek e-mails to the McAllisters dated June 19 and October 19, 2023 (SAC ¶¶ 60–61). Those e-mails post-date the McAllisters' January 25, 2023 purchase (SAC ¶ 15), are attributed to Millcreek, Intermountain, and Long rather than to Smith or Millrock, and are not part of the defined "Marketing Misrepresentations" (SAC ¶ 59). Plaintiffs' discussion of loss causation (Opp'n at 27) responds to no argument the Millrock Defendants made.

or Smith "made" the Offering Memorandum statements. The maker is "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). "One who prepares or publishes a statement on behalf of another is not its maker." *Id.*

**1. The SAC Attributes the Offering Memorandum to Colliers and Intermountain, Not Millrock.**

Plaintiffs liken Millrock to the fund in *Janus* because the Offering Memorandum sold Millrock's interests. Opp'n at 16. But "attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed." 564 U.S. at 142–43. And the fund in *Janus* was the maker because "[o]nly Janus Investment Fund—not JCM—bears the statutory obligation to file the prospectuses with the SEC," and nothing "on the face of the prospectuses" attributed the statements to the adviser. *Id.* at 146–47. The SAC alleges no comparable obligation on Millrock's part, and it attributes the Offering Memorandum to Colliers: Intermountain "prepared and disseminated the marketing materials—including the Offering Memorandum" (SAC ¶ 20; *see id.* ¶ 43), and Colliers' "name and trademark were prominently displayed" on them (*id.* ¶ 18). The MOU attached to the SAC as Exhibit A likewise provides that "Colliers is identified as the broker on all brokerage marketing material in accordance with state law." Dkt. 163-1 at 4. The Opposition cites no allegation that the Offering Memorandum bore Millrock's name or was attributed to Millrock. That Millrock "was listed as the owner of the interests sold" (SAC ¶ 22) describes the title Plaintiffs received, not authorship of the Offering Memorandum.

Plaintiffs call the MOU's allocation of roles a "division of labor" rather than "of authority." Opp'n at 16. But as the SAC describes that allocation, Millrock was to "develop, syndicate, and sponsor each investment, select and purchase the property, and be listed as the owner," while Millcreek marketed the investments and Intermountain served as broker of record "subject to CIGI's governing policies and marketing guidelines."

SAC ¶ 38. Nothing in that allocation gives Millrock control over the content or dissemination of the marketing materials.

**2. Paragraph 75's "Veto" Allegation is a Legal Conclusion.**

Plaintiffs rely on paragraph 75's assertion that, had any of five defendants objected, the statements "would not have been distributed to Plaintiffs as stated." Opp'n at 15–16. That sentence recites the *Janus* standard, applied identically to an entity broker, a marketing company, a fund, and two individuals, without any fact about how or when any of them exercised authority over the document. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In *In re CytRx*, on which Plaintiffs rely, allegations that executives "reviewed[,] edited[,] and approved" third-party articles were "generalized control allegations" that did not establish "ultimate authority," while documents the executives signed could "be fairly attributed to" them. *In re CytRx Corp. Sec. Litig.*, No. CV 14-1956-GHK, 2015 WL 5031232, at *5–7 (C.D. Cal. July 13, 2015); *see* Opp'n at 17. The SAC does not allege that Smith or Millrock signed, filed, or issued the Offering Memorandum.

**3. Smith's Alleged Approval Was, at Most, on Behalf of an Entity.**

The SAC alleges that Smith approved the Offering Memorandum "in [his] capacit[y] as [a] Millrock principal[]." SAC ¶ 137(c). One who approves a document on behalf of an entity acts "on behalf of another" and is not its maker. *Janus*, 564 U.S. at 142. Plaintiffs cannot contend both that the Offering Memorandum was Millrock's statement (Opp'n at 16) and that Smith had independent "ultimate authority" over it.

Nor does the SAC plead facts showing that Smith had authority over Millrock's communications at all. Its conclusory allegation that Smith and Long "jointly controlled and operated" Millrock (SAC ¶ 39) is undercut by Exhibit A, which identifies a different manager: "Kevin Long in cooperation with J. Adam Long own the LLC that is the managing partner of the Fund - MillRock Investment Fund Management," and "[t]he Fund pays Fund Management a fee to manage the assets in the Fund." Dkt. 163-1 at 2. Smith appears only as a copy recipient and as part of "the Smith family," which, with "the Long family," created the fund. *Id.* The Court need not accept conclusory allegations undercut

by the complaint's exhibits. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### C. Plaintiffs' New Agency Theory Cannot Rescue the First Cause of Action.

Plaintiffs argue that the *Janus* dispute is "academic" because Millrock is liable as principal for statements by Millcreek, Intermountain, Smith, and Long. Opp'n at 17–18 (citing *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475–76 (9th Cir. 2015); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1577–78 (9th Cir. 1990) (en banc)). The argument fails for two reasons.

*First*, the First Cause of Action does not plead it. Paragraph 138 incorporates Sections III, IV.A–E, IV.K, IV.L, and IV.P and limits the claim to statements "made, reviewed, or approved by" the five named defendants. It does not incorporate the SAC's respondeat superior section (Section IV.R, ¶ 137) or mention agency. By contrast, the Third, Fourth, and Fifth Causes of Action expressly invoke "the doctrine of respondeat superior (Section IV.R above)." SAC ¶¶ 157, 166, 174. Having adopted targeted incorporation to cure their shotgun pleading (Opp'n at 13), Plaintiffs cannot import into the First Cause of Action a theory it omits. New allegations in an opposition brief are irrelevant on a Rule 12(b)(6) motion. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

*Second*, respondeat superior is derivative. Under *Hollinger*, the agent is primarily liable "based on proof of his actions or omissions, and on scienter when required," and only then is the principal secondarily liable. 914 F.2d at 1577–78. Paragraph 137(c) charges Millrock only with Smith's and Long's acts—a circular theory as to Smith, whose primary violation is not adequately pleaded. Long's alleged role in the Offering Memorandum is the same "reviewed and approved" allegation (SAC ¶¶ 64, 75), and his only particularized statements—to Pinder in June 2022 (SAC ¶ 102)—underlie the Fourth Cause of Action, which is not asserted against Millrock. SAC ¶ 164. And to the extent Plaintiffs rely on Millcreek as Millrock's agent (Opp'n at 18), they identify no particular Millcreek

statement, by whom, to which Plaintiff, or when; they point generally to "[t]he website, blog, and e-mail statements, and the Offering Memorandum itself." *Id.* Those statements suffer from the particularity defects addressed in Section II.A, which relabeling them as an agent's statements does not cure.

**D. The SAC Still Fails to Plead Scienter as to Millrock or Smith.**

Plaintiffs urge the Court to review their scienter allegations "holistically." Opp'n at 20. *Tellabs* requires such a review, but a holistic review of insufficient allegations does not produce a strong inference.

**1. The SAC Does Not Identify Whose State of Mind Is Attributed to Millrock.**

Where, as here, the alleged misstatements appear in a document, the PSLRA requires Plaintiffs to plead scienter "with respect to those individuals who actually made the false statements." *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008). Section IV.K pleads scienter collectively as to "Millrock, Long, and Smith" (SAC ¶ 114) without identifying which individual knew which fact, or when. *See* 15 U.S.C. § 78u-4(b)(2)(A).

**2. The FFE Payment Does Not Support a Strong Inference of Fraud.**

Plaintiffs call the $2,000,000 equipment payment their "core allegation," arguing that a landlord that buys its tenant's surgical equipment necessarily knows the tenant "is not an operating nine-location network." Opp'n at 20. That does not follow. The Offering Memorandum told investors that the Property was a surgery center and that Pulse was expanding, with "4 additional locations [i]deally situated to meet the demand for vascular surgery." SAC ¶¶ 41, 67. Funding equipment for a new surgery center is consistent with an established practice opening a new facility, and the SAC pleads no fact showing that anyone at Millrock knew Pulse lacked other clinics. The more plausible inference is that a sponsor that committed $2,000,000 to equip its tenant's surgery center expected the tenant to open it and pay years of rent. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007). Indeed, the SAC alleges that Long later acknowledged Pulse "has not followed through on his plans to open the surgery center" (SAC ¶ 120)—describing a

tenant that failed to perform, not a sponsor that knew it would.

**3. Plaintiffs Concede That the "Markup" Figure is Not an Acquisition Price.**

Plaintiffs' theory also depends on Millrock having bought the Property for "approximately $2,000,000" and resold it at a $9,500,000 valuation. Opp'n at 20; SAC ¶¶ 42, 114(b). But the SAC alleges two acquisition prices—"approximately $2,000,000" (¶ 42) and "$75,000" (¶ 182)—and the Opposition concedes that both "derive from Long's April 30, 2024 e-mail," which "allocates nothing to the real property." Opp'n at 22 n.1. The SAC thus pleads no fact about what Millrock paid for the real estate; the "$2,000,000" is, as Plaintiffs describe it, the equipment payment to Pulse. SAC ¶ 122. Plaintiffs cannot plead the same $2,000,000 as both the building's price and money "routed back" to the tenant out of that price, nor build a strong inference on an acquisition price they concede they have not pleaded.

**4. The Remaining Allegations Are Motive and Status.**

The rest of paragraph 114 alleges Smith's family ownership of Millrock (¶ 114(a)), Smith's receipt of a copy of the 2020 MOU (¶ 114(g)), the 2020 failure of Millrock's first TIC investment (¶ 114(d)), and a different tenant's December 2022 default (¶ 114(f)). These are allegations of motive, status, and business history; none shows that anyone knew, when the Offering Memorandum was disseminated, that any statement in it was false. Motive and opportunity are "not sufficient to establish a strong inference of deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999)). *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003), is not to the contrary; Plaintiffs describe it as a case in which ownership sufficed "together with other particularized facts" (Opp'n at 21), and there are none here.

The "common script" theory (SAC ¶ 114(c); Opp'n at 21) adds nothing. It infers that Long and Smith distributed a script because several people used similar words with

Plaintiffs, on the premise that Long and Smith trained Millcreek's agents. SAC ¶ 114(c). But Doug and Troy Scheel were Mountain West brokers (SAC ¶¶ 25–27), Destito ran an independent qualified intermediary (¶¶ 28–29), Rutherford was affiliated with Elevated 1031 Exchange (¶ 16), and the remaining speaker was Long himself (¶ 102). The SAC alleges no fact connecting Smith to any of them. And the MOU on which Plaintiffs rely assigns agent training to "MCP and the Kevin Long team," with "mentoring from Lew Cramer and Adam Long"—not to Smith. Dkt. 163-1 at 3–4. Common phrases such as "safe" and "recession resilient" do not support a cogent inference that Smith wrote a script, much less one he knew was false.

**E. The Sixth Cause of Action for Scheme Liability Fails.**

The Millrock Defendants do not dispute that, after *Lorenzo v. SEC*, 587 U.S. 71 (2019), scheme claims may overlap with Rule 10b-5(b) claims. *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 & n.10 (9th Cir. 2021). But Plaintiffs must still plead, as to each defendant, a deceptive act, with particularity and scienter. Order at 22 & n.8. They do not.

The conduct Plaintiffs attribute to Millrock—buying the Property, paying for the tenant's equipment, and selling interests through unregistered entities (Opp'n at 22)—consists of ordinary commercial acts that are not deceptive in themselves. Plaintiffs' theory is that the acts became deceptive because they were not disclosed. That is an omission theory, subject to the rule that "[p]ure omissions . . . are not actionable under Rule 10b-5(b)." Order at 16 (citing *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024)). Nor do Plaintiffs explain how they relied on acts that, as they allege, were concealed from them. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159, 161 (2008). And a registration violation is not a deceptive device; no registration claim is pleaded.

As to Smith, Plaintiffs identify only the paragraph 59 e-mails he allegedly "disseminated." Opp'n at 22. A dissemination theory still requires Plaintiffs to identify what was disseminated, to whom, and when; paragraph 59 does not. Paragraph 182 also

continues to describe the scheme through groupings such as "Millcreek, Intermountain and CIGI's efforts," and the claim fails for lack of scienter for the reasons in Section II.D.

**F. The Sixteenth Cause of Action for Control Person Liability Fails.**

Plaintiffs argue that Millrock and Millcreek "were run by the same people." Opp'n at 23. But Section 20(a) asks whether *the defendant* possessed the power to control the primary violator. *See Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1371 n.195 (C.D. Cal. 2014). That Smith and Long allegedly operated both entities (SAC ¶ 39) is an allegation about the individuals, not Millrock. The SAC does not allege that Millrock owns any interest in Millcreek—Millcreek's four members are entities controlled by Smith, Spencer Taylor, Jerald Adam Long, and Kevin Long (SAC ¶ 36)—or that Millrock held a board seat, lent it money, or had a contractual right to direct it. *See Batwin v. Occam Networks, Inc.*, No. CV 07-2750, 2008 WL 2676364, at *25 (C.D. Cal. July 1, 2008). The SAC also alternately alleges that Intermountain (¶ 20) and Long (¶ 23) controlled Millcreek. Plaintiffs' authority, *ZoomInfo*, held even a controlling shareholder's status insufficient without more (Opp'n at 23); Millrock is not alleged to be a shareholder at all. Paragraph 237's conclusory recitation of control does not fill the gap.

**G. Plaintiffs' State-Law Claims Should Be Dismissed.**

**1. The Court Should Again Decline Supplemental Jurisdiction.**

If the Court dismisses the federal claims against the Millrock Defendants, it should again decline supplemental jurisdiction over the state-law claims against them. Order at 23–24 (citing *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996)); *see* 28 U.S.C. § 1367(c)(3). If the Court reaches them, they fail on the merits.

**2. Rule 9(b) Applies, and the SAC Does Not Satisfy It.**

Under the "two-track" approach of *Vess v. Ciba-Geigy Corp. USA*, on which Plaintiffs rely (Opp'n at 23–24), the Court disregards deficient fraud averments and asks whether what remains states a claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104–05 (9th Cir. 2003). Here, nothing remains: every state-law claim against the Millrock Defendants rests on the same alleged misrepresentations and omissions (SAC ¶¶ 193, 201,

207, 217–218, 223, 227, 231, 234), and the SAC alleges no non-fraudulent conduct by Smith or Millrock directed at any Plaintiff.

**3. The Fiduciary Duty and Aiding-and-Abetting Claims Fail.**

Plaintiffs identify no Plaintiff for whom Smith acted as broker or agent. They invoke California Civil Code section 2079 (Opp'n at 24), but that statute applies to "residential real property improved with one to four dwelling units or a manufactured home." Cal. Civ. Code § 2079(a). The Property is a freestanding ambulatory surgery center in *Texas. SAC ¶ 41. Horiike v. Coldwell Banker Residential Brokerage Co.,* 1 Cal. 5th 1024 (2016), likewise addressed the sale of a residence in which a single brokerage represented buyer and seller through associate licensees, and held that the associate licensee owed the buyer the brokerage's duty under Civil Code section 2079.13(b). To the extent *Horiike* describes a listing agent's statutory obligation to disclose known material facts, *see id.* (citing Cal. Civ. Code § 2079.16), that is a disclosure duty, not the fiduciary duty the Ninth Cause of Action asserts. The SAC alleges that Smith was a sales agent for the seller-side entities (SAC ¶ 24), and an arm's-length sale does not create a fiduciary relationship. *Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, No. 17-CV-03805-LHK, 2018 WL 1805516, at *12 (N.D. Cal. Apr. 16, 2018).

The aiding-and-abetting claim against Millrock requires "actual knowledge of the specific primary wrong the defendant substantially assisted." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144–45 (2005); *see* Opp'n at 24–25. Paragraph 213 alleges, in one sentence, that Millrock and Intermountain assisted nine alleged fiduciaries by "distributing sales materials . . . , referring Plaintiffs to the Property, recommending the investment, and providing assurances." It identifies no material Millrock distributed, no Plaintiff it referred, no recommendation it made, and no fact showing that it actually knew of any specific breach.

**4. The Conversion Claim Fails.**

Plaintiffs note that Pinder closed on October 11, 2022, the same day as Millrock's acquisition. Opp'n at 25. But the SAC does not allege that Pinder's $260,000 funded any

part of the equipment payment, which, as the SAC alleges, Millrock made "[a]s part of" its acquisition from Spectre. SAC ¶ 122. Plaintiffs' alternative theory—that "each of the Defendants" diverted commissions and fees (SAC ¶ 218)—is pleaded collectively and does not allege that Millrock or Smith received any commission or fee; indeed, Exhibit B provides that Millcreek, not Millrock, pays the referral fee. Dkt. 163-2 ¶ 7. And distributions *paid to* Procopio (Opp'n at 25–26) are not a conversion of his property.

More fundamentally, Plaintiffs paid for their TIC interests and received deeds. *SAC ¶ 45. Welco Electronics, Inc. v. Mora,* 223 Cal. App. 4th 202 (2014), on which Plaintiffs rely, does not hold otherwise. It involved charges to the plaintiff's credit card made without consent; the plaintiff "did not consent to its credit card or its information being used by or on behalf of defendant." *Id.* at 214. The pages Plaintiffs cite set out general conversion principles; they do not hold that "consent obtained by fraud does not defeat conversion." *Compare* Opp'n at 25 *with Welco*, 223 Cal. App. 4th at 208–09. A claim that Plaintiffs were induced to pay by misrepresentation is a fraud claim, not conversion. *See Kim v. Westmoore Partners, Inc.*, 201 Cal. App. 4th 267, 284 (2011) ("[T]he simple failure to pay money owed does not constitute conversion."); *accord Voris v. Lampert*, 7 Cal. 5th 1141, 1151–52 (2019) ("money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved") (citation omitted).

**5. The Negligence-Based Claims Fail.**

Plaintiffs characterize these claims as sounding in negligence (Opp'n at 26), but the negligent misrepresentation claim rests on "the false representations detailed in Section IV above" (SAC ¶ 231)—the same statements underlying the fraud claims, which are not attributed to Smith or Millrock with particularity. The professional negligence claim rests on a duty arising from Defendants' "capacities as licensed real estate brokers, agents, and/or accommodators" (SAC ¶ 226), but the SAC does not allege that Millrock was any of these or that Smith acted as any Plaintiff's broker or agent.

**6. The Elder Abuse and Utah Exploitation Claims Fail.**

Plaintiffs contend that the Seventh and Eighth Causes of Action reach non-fraud

conduct. Opp'n at 26. But the conduct alleged as to the Millrock Defendants is the same alleged nondisclosure and misrepresentation (SAC ¶¶ 193, 201), and the Opposition identifies no communication between Smith or Millrock and Thart or Pinder. The Utah statute requires a "position of trust and confidence" (SAC ¶ 200), and the only such relationship alleged is Pinder's relationship with Millcreek "via his wife's grandson, Andrew Bell." SAC ¶ 201.

**7. The UCL Claim Fails.**

Plaintiffs now locate the "unlawful" predicate in the sale of securities through unregistered entities. Opp'n at 27. Paragraph 234 does not; it rests on "the deliberate withholding of material information and a pattern of misconduct across multiple Millcreek-marketed properties." That fraud theory is subject to Rule 9(b), *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009), and Plaintiffs may not substitute a different predicate through their brief. *Schneider*, 151 F.3d at 1197 n.1.

**H. The Court Should Dismiss with Prejudice.**

Plaintiffs say the SAC responded to the Court's guidance "with new allegations drawn from Defendants' own documents and admissions." Opp'n at 28. As to the Millrock Defendants, it did not. The Court instructed Plaintiffs to "address the deficiencies identified herein." Order at 24. The deficiency it identified most specifically—the e-mail allegation against Smith—is unchanged (SAC ¶ 59), as is the substance of the Offering Memorandum approval allegation (SAC ¶¶ 64, 75). Plaintiffs' counsel confirmed during the conference of counsel that Plaintiffs did not believe further amendment was necessary. Wallner Decl. (Dkt. 169-1) ¶ 3. And the Opposition identifies no additional fact Plaintiffs would plead as to Smith or Millrock. *See* Opp'n at 27–28. Dismissal with prejudice is warranted. *Zucco Partners*, 552 F.3d at 1007; *Asing v. Hawaii Gov't Emps. Ass'n*, No. 24-3101, 2025 WL 1588732, at *2 (9th Cir. June 5, 2025) (unpublished); *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011) ("Plaintiffs had three bites at the apple, and the court acted well within its discretion in disallowing a fourth.").

//

## III. CONCLUSION

For these reasons and those in their Motion, the Millrock Defendants respectfully request that the Court dismiss the SAC as to them in its entirety, with prejudice.

Dated: October 9, 2026

**BERKOWITZ OLIVER LLP**

BY: */s/ Timothy D. Wallner*
Timothy D. Wallner, *Pro Hac Vice*

*Attorney for Defendants Brent Smith and Millrock Investment Fund 1, LLC*